THE STATE ex rel. ELLIOTT W. MAJOR, Attor-
ney-General, v. MISSOURI PACIFIC RAIL-
WAY COMPANY et al.

In Banc, February 9, 1912.

1. ABUSE OF FRANCHISE: Insufficient Under Statute Invoked:
Sufficient at Common Law. A petition to recover a statutory
penalty, though insufficient under the statute which the pleader
seeks to invoke, may still be sufficient to authorize a recovery
at common law.

2. ————: Pleading: Prayer. The prayer of the information
may be disregarded in determining whether it states a cause of
action. If a cause of action is stated under any statute, or under
the common law, the information is good against demurrer,
although its prayer would seem to preclude the idea that it was
based upon a certain section applicable to the offense charged.

3. ————: Quo Warranto: Pleading: Statement of Facts. In
proceedings in the nature of *quo warranto* to revoke the fran-
chise of a corporation duly chartered or licensed to transact
business in this State, the pleadings must conform to the general
Code of Civil Procedure. The information should contain a
plain and concise statement of the facts constituting the cause
of action.

4. ————: ————: ————: Railroads: Combination to Fix
Rates. An information charging that sixteen railroads entered
into an agreement for the purpose of lessening and destroying
free competition in the transportation of passengers and freight,
and that by said agreement they have fixed and regulated the
rates for the transportation of both passengers and freight, but
which nowhere purports to designate any of the rates agreed
upon and alleged to have been fixed or maintained by them, or
the length of time said rates, if fixed, shall continue, and which
wholly fails to set out or describe the substance of the alleged
wrongful agreement, does not state a cause of action of mis-
user, abuse or perversion of corporate powers.

5. ————: ————: ————: ————: ————: Conclusion of
Law. An allegation in an information in a proceeding in the
nature of a *quo warranto* that the agreement or combination to
fix railroad rates entered into by respondent railroad companies
is an illegal usurpation and an abuse and perversion of their
corporate powers is merely a conclusion or presumption of law

on the part of the pleader, and if not predicated upon alleged facts does not supply the lack of such definite· facts as should be specifically pleaded.  The law does not prohibit every kind of contract or traffic .arrangement between railroad companies concerning the carrying of passengers and freight; if so, such an allegation would be sufficient.  But there are many kinds of contracts that railroad companies may enter into with each other without violating any statute, the common law or the public policy of the State.  [Following State ex rel. v. Grimm, 220 Mo. 483, refusing to follow State ex inf. v. Missouri Pacific Railway Co., 206 Mo. 40, and distinguishing State ex inf. v. Standard Oil Co., 218 Mo. l. c. 364.]

*Held*, by WOODSON, J., that an information charging in general terms a conspiracy to do an unlawful thing is sufficient, and need not set out the terms of the conspiracy or the means employed; but where the information undertakes to charge an unlawful conspiracy to do a lawful thing the means employed and the terms of the agreement must be pleaded.  It is not unlawful in this State to charge less passenger and freight rates than certain maximum rates fixed by statute; but an agreement between railroad companies to charge certain definite rates less than the maximum rates, tends to deprive the public of the benefit· of competition between those companies, and is unlawful.  But an information which in general terms charges that certain railroad companies entered into an agreement and combination to fix freight and passenger rates, without alleging what those rates were or are, or the means employed for fixing and maintaining them, does not state a cause of action.  [Distinguishing State ex inf. v. Standard Oil Co., 218 Mo. l. c. 367, and holding that case is in harmony with these views.]

6. **FORMER DECISIONS: Precedents.** The reasons or discussions of an appellate court in deciding a case are not precedents in other cases in which a different state of facts are at issue.

7. ———: **Of Other States: On Questions of Pleading.** Rules of pleading announced by appellate courts of other States are not a safe guide for measuring the sufficiency of pleadings in this State, for the obvious reason that every State has its own code, and that may be wholly unlike Missouri's.

# Quo Warranto.

DEMURRER SUSTAINED.

State ex rel. v. Railroad.

*Elliott W. Major*, Attorney-General, *Charles G. Revelle* and *James T. Blair*, Assistant Attorneys-General, for the State.

(1) Section 17, article 2 of the Constitution, and Sec. 1062, R. S. 1899, are violated when competing railway companies enter into an agreement and combination for the purpose of fixing, regulating and maintaining freight rates or passenger fares to be charged between points located in this State. Such agreements restrain and prevent competition, and the chief purpose sought to be accomplished by the above sections is to preserve free and open competition between and among railway companies and prohibit any and all arrangements which defeat such competition. Railroad v. State, 72 Tex. 404; Security Co. v. United States, 193 U. S. 351; Pearsall v. Railroad, 161 U. S. 676; Morrill v. Railroad, 55 N. H. 537; Currier v. Railroad, 48 N. H. 325; Railroad v. Wear, 135 Mo. 230. (2) Such agreements are also illegal at common law as being in restraint of trade and commerce, against public policy, and violative of the law of the corporation's creation. State ex rel. v. Gas Co., 153 Ind. 488; Railroad v. Railroad, 38 Ind. App. 244; Railroad v. Railroad, 3 Robertson, 415; Railroad v. Closser, 126 Ind. 348; Anderson v. Jett, 89 Ky. 375; Stanton v. Allen, 5 Denio, 434, 49 Am. Dec. 282; Hooker v. Vandewater, 4 Denio, 349, 47 Am. Dec. 258; Railroad v. Railroad, 41 La. Ann. 970; People v. Sheldon, 139 N. Y. 251; Railroad v. Interstate Com. Commission, 39 C. C. A. 422; Pratt v. Tapley, 3 Pugsley N. B. 171; Sanford v. Railroad, 24 Pa. St. 382; Cravens v. Rogers, 101 Mo. 247; Clemens v. Meadows, 29 Ky. L. Rep. 619; Mfg. Co. v. Watch & Clock Co., 14 C. C. A. 14; United States v. Freight Assn., 166 U. S. 290; Joint Traffic Assn. v. United States, 171 U. S. 505; State v. Stewart, 59 Vt. 286; Railroad v. Collins, 40 Ga. 582; United States v. Freight Assn., 7 C. C. A. 88; Rail-

road v. Mining Co., 68 Ill. 494; Security Co. v. United States, 193 U. S. 351; Mobile v. Kimbrell, 102 U. S. 691; Gloucester v. Pennsylvania, 114 U. S. 196; Gibbons v. Ogden, 9 Wheat. 215; People v. Raymond, 34 Cal. 497; United States v. Pipe & Steel Co., 54 U. S. App. 723; State ex rel. v. Ins. Co., 152 Mo. 42; State ex rel. v. Standard Oil Co., 218 Mo. 1; Gibbs v. Gas Co., 130 U. S. 408; Coal Co. v. Coal Co., 68 Pa. St. 173; Brewing Co. v. Belinder, 97 Mo. App. 71; Commonwealth v. Carlisle (N. P.), Brightley, 38; Bailey v. Master Plumbers, 103 Tenn. 118; State v. Glidden, 55 Conn. 75; State ex rel. v. Stock Exchange, 211 Mo. 193; Beach on Monopolies and Industrial Trusts, par. 149; Noyes on Intercorporate Relations, p. 372; Spelling on Trusts and Monopolies, par. 82; Greenhood on Public Policy, p. 2661, 2662 and 2663; 1 Hawkins, P. C., p. 470, sec. 2; Stewart v. Trans. Co., 17 Minn. 395; State v. Board of Trade, 107 Minn. 505; State ex rel. v. Packing Co., 173 Mo. 388. (3) The common law in respect to such unlawful agreements has not been abrogated by statutory provisions, but the same is in full force and effect in this State. Coal Co. v. People, 214 Ill. 421; Branden v. Carter, 119 Mo. 581; Evans v. McFarland, 186 Mo. 723; State ex rel. v. Standard Oil Co., 218 Mo. 360; Humphreys v. Davis, 100 Ind. 284; Laws 1907, sec. 8970, p. 379; Currier v. Railroad, 48 N. H. 329. (4) The Anti-Trust Act, found at page 377, Laws 1907, applies to and covers the transportation of freight by railway, and the agreement which the second count seeks to condemn violates its provisions. Laws 1907, secs. 8965, 8968; United States v. Freight Assn., 166 U. S. 324; State ex inf. v. Standard Oil Co., 218 Mo. 1; State ex rel. v. Packing Co., 173 Mo. 356; State ex rel. v. Ins. Co., 152 Mo. 1. (5) The information, whether measured by the requirements of the common, constitutional or statutory law, is amply sufficient to state an unlawful combination. Laws 1907, sec. 8977, p. 381; Coal Co. v. People, 214

Ill. 421; State v. Dreany, 69 Pac. 182; State v. Stewart, 59 Vt. 286; State v. Shaw, 42 N. H. 393; United States v. Gardner, 42 Fed. 829; Hazen v. Commonwealth, 23 Pa. St. 363; State ex inf. v. Standard Oil Co., 218 Mo. 1; State ex rel. v. Insurance Co., 152 Mo. 40; Knight & Jilson Co. v. Miller, 87 N. E. 827; State ex rel. v. Railroad, 206 Mo. 28. (6) The charter of a private or public corporation will be forfeited for any willful misuser or abuse of its franchise which injures or menaces the interests or welfare of the State, or the community in which it transacts business, whether the misuser or abuse consists in the exercise of a franchise or power not conferred on the corporation by its charter, or in the violations of prohibitions in its charter, or in the violations of the common, statutory or constitutional laws to which it is subject, or in the violation of established principles based upon the ground of public policy. State ex inf. v. Standard Oil Co., 218 Mo. 1; State ex rel. v. Delmar Jockey Club, 200 Mo. 70; Railroad v. State ex rel., 155 Ind. 456; 2 Spelling on Extra. Remedies, pr. 1820; Stockton v. Railroad, 50 N. J. Eq. (5 Dick) 52; Attorney-General v. Railroad, 12 C. E. Gr. 631. (7) Both domestic and foreign railway companies, while doing business within this State and transporting persons and property between cities and communities located wholly within this State, and in fixing and maintaining rates and fares applicable solely to traffic within this State, are subject to State jurisdiction and amenable to the State laws governing such matters. Railroad v. Kentucky, 161 U. S. 701; State ex inf. v. Standard Oil Co., 218 Mo. 376; Ins. Co. v. Daggs, 172 U. S. 566; Com. Co. v. Spencer, 205 Mo. 118; Gibbons v. Ogden, 9 Wheat. 195; Thorp v. R. & B. Co., 27 Vt. 142; Bridge Co. v. Kentucky, 154 U. S. 209; sec. 5, art. 12, Mo. Constitution; sec. 14, art. 12 Mo. Constitution; Tenth Amendment to U. S. Constitution; Packing Co. v. Ark., 212 U. S. 322.

*E. L. Scarritt, Geo. P. B. Jackson, O. M. Spencer, Gardiner Lathrop, Frank Hagerman, John H. Lucas, J. G. Trimble, Samuel W. Moore, R. A. Brown, Sam West, W. F. Evans, J. L. Minnis, Martin L. Clardy* and *W. C. Marshall* for respondents.

(1) The information does not state facts sufficient to constitute a cause of action. The information states no facts whatever. It states mere conclusions of the pleader. Pier v. Heinrichoffen, 52 Mo. 336; Sidway v. Land & Live Stock Co., 163 Mo. 372; Chemical Co. v. Nemnich, 169 Mo. 396; Vogeler v. Punch, 25 Mo. 576; State ex rel. v. Grimm, 220 Mo. 490. (2) The information is framed upon the erroneous hypothesis that this is a proceeding to oust defendants from franchises they never had a right to exercise; in which cases it is only necessary for the Attorney-General to inform the court that the defendants are claiming a right to a franchise never granted, and then it devolves upon the defendants to affirmatively show the grant of charter powers; whereas, in this case, the Attorney-General informs the court that the defendants have been legally and properly granted charters and franchises by the State, and seeks to take the same away from them, not because they were not originally legally granted, but because they have misused and abused such charter powers and franchises. In such cases it is not sufficient for the Attorney-General to inform the court in general terms, by legal conclusions of his own, that the defendants have abused or misused their charter powers and franchises, but it is necessary to state specifically the facts relied upon by the Attorney-General to show such abuse or misuse, so that the defendants may "be informed of the nature and cause of the accusation" (Amendment 6 to U. S. Constitution, and sec. 22, art. 2, Constitution of Missouri), in order that they may take issue thereon and properly prepare their defense thereto. This is the distinction

between informations to divest defendants of charter powers never legally granted, and to forfeit legally granted powers because of abuse or misuse thereof. State ex rel. v. Grimm, 220 Mo. 491. (3) The information in this case is not sufficient even when measured by the precedents furnished in State ex inf. v. Railroad, 206 Mo. 28, or in State ex inf. v. Standard Oil Co., 218 Mo. 1. In both of those cases the Attorney-General undertook to state with precision the specific facts relied upon to authorize a forfeiture of the charter powers and franchises of the defendants, because of their abuse or misuse thereof, and did not, as the Attorney-General does in this case, simply inform the court generally that the defendants had entered into an unlawful conspiracy to fix and regulate prices. (4) The information in the case at bar is wholly defective even under Sec. 8977, Act of March 19, 1907, Laws 1907, p. 381. This section only makes it unnecessary to allege or plead "the manner in which, or when or where" such pool was created. In these respects only has this act made any change in the law in respect to pleadings in such cases, and these changes in the law are not sufficient to make the information in the case at bar sufficient. The manner in which a conspiracy denounced by the anti-trust laws was made or effected, relates only to the form of the agreement, whether in writing or oral, and does not pertain to the substance of the agreement at all. The substance of the agreement or conspiracy may be shown by either direct or circumstantial evidence, or may be inferred from the conduct of the parties, whilst the manner, fashion, or form of the agreement or conspiracy, or the time when or where the conspiracy was concocted, would not appear from the acts of the parties in carrying out the conspiracy. The manner, fashion or form of the agreement is of no consequence, neither is the time when or the place where the conspiracy was concocted of any moment. These are immaterial circumstances.

The substantive fact necessary to be alleged and proved is the agreement which offends against the anti-trust laws. (5) The particular cause of complaint in this case is, not that the defendants are charging higher passenger or freight rates than the law permits, but that they are acting in concert in charging what is a legal rate under the laws of Missouri, and by so doing are stifling competition. In other words, that each of the defendants has a right to do for itself what they all are alleged to have agreed to do, and therefore competition is destroyed, because it is argued that whilst the law permits the rates exacted by the defendants to be charged nevertheless, if the defendants acted separately, competition might induce them, while acting separately, to accept less than the legal rate for passengers and freights. His contention would be necessarily and logically the same whether the defendants had agreed among themselves to charge two cents a mile, or one cent a mile, or even a fraction of a cent a mile, for in any event without such an understanding among themselves, he says, competition might induce the several defendants to charge less than the rate they had agreed among themselves to charge, such rate always being within the maximum legal rate. The anti-trust laws of this State were not intended to afford the basis for such a drastic proceeding. Those laws were only intended to strike at illegal acts, and not at the doing of things which the law expressly permits.

BROWN, J.—Information in the nature of *quo warranto* filed in this court on May 4, 1909, whereby the State of Missouri seeks to revoke the franchises heretofore granted by it to sixteen railroad companies, on the alleged grounds that said railroad companies have abused and perverted their corporate powers, or to impose a fine on said respondents in lieu of said revocation.

After reciting that seven of the respondent railroad companies were chartered by the State of Missouri, and the remaining nine duly licensed to transact business in this State as foreign corporations, the information charges:

"That respondents have formed and entered into an unlawful agreement, confederation, combination and conspiracy wherein and whereby they have agreed, confederated and combined and conspired among themselves and with each other, to fix, regulate and maintain passenger rates within this State, and to determine, regulate and fix the rates to be charged by the several competing lines for the transportation of passengers between the various cities, towns, points, centers and communities located in this State, and on and along the lines of railway owned and operated by respondents, and for the unlawful purpose of limiting and destroying competition in the transportation of passengers over their several lines in this State, and for the unlawful purpose of depriving the public and people of this State of the benefits of full and wholesome competition, and for the unlawful purpose of destroying, limiting and restraining open and independent action on the part of each of the respondents in the matter of passenger rates to be charged the people of this State.

"That by means of the said unlawful agreement, confederation, combination and conspiracy, the trade, traffic and commerce in this State has been hindered, injured and retarded, and that full and free competition in the transportation of passengers and the traveling public in this State has been limited and restrained, to the great damage and detriment of the public.

"That by reason of the acts and things done by respondents, as hereinabove set out, said respondents have been guilty of a willful, wrongful, illegal and malicious perversion and abuse of the franchises, li-

censes and authority severally granted to them by the State of Missouri, and of illegal and unlawful usurpations of privileges, franchises and powers not granted them, all of which is to the great detriment of the public and in violation of the laws and Constitution of the State of Missouri.

"That respondents have formed and created, entered into and become members of and participated in an unlawful agreement, combination, confederation, understanding and conspiracy wherein and whereby they have agreed, confederated, combined and conspired among themselves and with each other to fix, regulate and maintain freight rates within this State, and to determine, regulate and fix the rates to be charged by said several competing lines for the transportation of products, commodities, articles and other freight between the various cities, towns, points, centers and communities located on and along their said lines in this State, and with a view and for the unlawful purpose of limiting, lessening, and destroying full and free competition in the transportation of products, commodities, articles and other freight over and along their several lines in this State, and with a view and for the unlawful purpose of depriving the people of this State of the benefit of full, free and wholesome competition in such transportation, and with a view and for the unlawful purpose of destroying, restricting and limiting free, open and independent action on the part of each of the respondents in the matter of freight rates to be charged the people of this State.

"That said respondents by means of said unlawful agreement, confederation, combination and conspiracy have fixed, determined and regulated the rates now charged and the rates to be charged hereafter for the transportation of products, commodities, articles and other freight over and along their several lines in this State, and are now unlawfully maintaining the

rates so fixed and determined by the unlawful means aforesaid, and have limited and lessened and are now restraining full and free competition in the transportation of products, commodities and other articles of freight, and are hindering, injuring and retarding the trade, traffic and commerce in this State, to the great damage and detriment of the people.

"That by reasons of the acts and things done by respondents, as hereinabove set out, said respondents have been guilty of a willful, wrongful, illegal and malicious perversion and abuse of the franchises, licenses and authority severally granted to them by the State of Missouri, and of illegal and unlawful usurpations of privileges, franchises and powers not granted them, all of which is to the great detriment of the public, and in violation of the laws and Constitution of Missouri."

Concluding with the prayer: "That respondent corporations, each and all of them, severally, be excluded from all corporate rights, privileges and franchises enjoyed or exercised by them under the laws of the State of Missouri, and that their rights, authority, licenses, franchises and certificates to do business in the State of Missouri be declared forfeited, or in lieu thereof a fine be imposed upon them in punishment of the offense, as above set out."

To the foregoing information respondents filed separate demurrers, the substance of which is covered by one which reads as follows:

"The information does not state facts sufficient to constitute a cause of action against this respondent.

"An agreement between railroad companies, such as is charged in the information, is not an unlawful agreement.

"The information does not state facts which show that respondent has committed any acts which are not authorized by its charter; or that it has violated the

Constitution, the laws or the public policy of the State
of Missouri, but such information affirmatively shows
that respondent has exercised only such powers as it
might lawfully exercise under the laws of this State.

"The information shows on its face that respond-
ent has not been guilty of any abuse, misuse or per-
version of its franchises granted to it by the State of
Missouri, or of any illegal or unlawful usurpations
of privileges, franchises and powers granted it."

It will be observed that the alleged wrongful acts
of respondents are charged to be "in violation of the
laws and Constitution of Missouri;" but the learned
Attorney-General contends that if the information
states a cause of action against the respondents under
either the Constitution, statutes or common law in
force in this State, the demurrers must be overruled.

In this contention he is correct. A petition to re-
cover a statutory penalty, though insufficient under
the statute which the pleader seeks to invoke, may still
be sufficient to authorize a recovery at common law.
[Tackett v. Huesman, 19 Mo. 525; Mishler Lumber
Co. v. Craig, 112 Mo. App. 454.]

The Attorney-General asserts that the alleged
wrongful acts of the respondents are prohibited by sec-
tion 17, article 12, Constitution of Missouri, as follows:

"No railroad or other corporation, or the lessees,
purchasers or managers of any railroad corporation,
shall consolidate the stock, property or franchises of
such corporation with, or lease or purchase the works
or franchises of, or in any way control, any railroad
corporation owning or having under its control a par-
allel or competing line; nor shall any officer of such
railroad corporation act as an officer of any other rail-
road corporation owning or having the control of a
parallel or competing line. The question whether rail-
roads are parallel or competing lines shall, when de-
manded, be decided by a jury, as in other civil issues."

In his brief the Attorney-General further contends that his information herein states a cause of action against respondents under sections 10298 and 10301, Revised Statutes 1909, prohibiting persons and corporations from "creating or entering into combinations in restraint of trade or competition in the importation or transportation of any product or commodity in this State or any article or thing bought or sold whatsoever," and declaring all such combinations criminal conspiracies in restraint of trade. He further asserts that his information states a cause of action against respondents under section 3081, Revised Statutes 1909, which reads as follows:

"It shall be unlawful for any railroad company, corporation or individual owning, operating or managing any railroad in the State of Missouri, to enter into any contract, combination or association, or by any manner of means whatever consolidate the stock, property or franchises of such company, corporation or individual, or to lease or purchase the works or franchises of, or in any way whatever, to any degree exercise control over, any railroad company, corporation or individual owning or having under his or their control or management a parallel or competing line in this State, but each and every such railroad, whether owned, operated or managed by a company, corporation or individual, shall be run, operated and managed separately by its own officers and agents, and be dependent for its support on its own earnings from its local and through business in connection with other roads, and the facilities and accommodations it shall afford the public for travel and transportation under fair and open competition."

For violating the section last above quoted, the law (Sec. 3085, R. S. 1909) prescribes a penalty of from $1000 to $5000 for the first offense; for the second offense, $5000 to $10,000, and for conviction of the third offense, a forfeiture of franchise. So that

as the State prays a forfeiture of franchises in this action and does not charge a former offense or a former conviction, it would appear that the information was not based on said section 3081, Revised Statutes 1909.

However, as the prayer of the information may be disregarded in determining whether it states a cause of action [Smith v. Sims, 77 Mo. l. c. 275), if a cause of action is stated under any of the laws above noted, or under the common law, the information is good against the demurrers interposed by respondents.

Since the well considered decision of this court in the case of State ex rel. v. Grimm, 220 Mo. 483, it has become the settled law of Missouri that in proceedings in the nature of *quo warranto* to revoke the franchise of a corporation duly chartered or licensed to transact business in this State, the pleadings shall conform to our general Code of Civil Procedure.

In the Grimm case, supra, this court, in Banc, speaking through GANTT, J., said: "The decisions of this court have recognized the right of a defendant or respondent to demur to the information in the nature of *quo warranto,* and this doctrine is the prevalent one in other States, and is approved by the text-writers on the ground that it brings the pleadings and practice in these *quo warranto* cases in harmony with the practice in other civil cases. . . . Whenever the information in *quo warranto* avers that the respondent has a corporate existence and the evident purpose of the proceedings is to have its charter forfeited for non-user, misuser or usurpation of powers, then the pleader must plead *specifically* the acts of the non-user, the acts of misuser or of usurpation relied upon for grounds of forfeiture, so that the corporation may know what it is called upon to meet and defend."

Our Code of Civil Procedure simply requires that all petitions shall contain "a plain and concise state-

ment of the facts constituting a cause of action." [Sec. 1794, R. S. 1909.]

In addition to these general rules, we have the following section which throws some additional light upon what is required in a pleading of the character now under consideration:

"In any suit that is now pending, or which may hereafter be brought, in which it is charged that any person, corporation, partnership or association of persons has created, entered into, become a member of or participated in any pool, trust, agreement, combination, confederation or understanding in restraint of trade or competition with any other person, corporation, partnership or association of persons, it shall not be necessary to allege or plead the manner in which, or when or where such pool, trust, agreement, combination, confederation or understanding was made or effected." [Sec. 10310, R. S. 1909.]

Under the foregoing rules, is the information filed by our Attorney-General sufficient to state a misuser, abuse or perversion of corporate powers by respondents? Upon diligent consideration of the facts stated in the information, we find that it is not.

It charges the creation and entering into by respondents of an agreement for the purpose of lessening and destroying free competition in the transportation of passengers, freight, etc.; that by said agreement respondents have fixed and regulated the rates for the transportation of both passengers and freight; but the information nowhere purports to designate any of the rates agreed upon by respondents, and alleged to have been fixed or maintained, or the length of time which said rates, if fixed, shall continue. The information also wholly fails to set out or describe the substance of the alleged wrongful agreement entered into between respondents. [Sidway v. Live Stock Company, 163 Mo. 342; Shohoney v. Railroad, 223 Mo. 649;

Lackawanna Coal and Iron Co. v. Long. 231 Mo. 605; Mallinckrodt Chemical Works v. Nemnich, 169 Mo. 388.]

In Shohoney v. Railroad, supra, VALLIANT, C. J., in construing the law of pleading, l. c. 671, said: "It is the duty of a plaintiff to state his case with such clearness and definiteness that his adversary may know exactly what the complaint against him is. Our statute says the petition must contain 'a plain and concise statement of the facts constituting a cause of action, without unnecessary repetition' [Sec. 592, R. S. 1899; Ann. Stat. 1906, p. 612.] That duty devolves on the plaintiff, and it is one that appeals to our sense of justice and fair play. There are no words in the Code of Civil Procedure more significant of the spirit which actuated its authors than the words just quoted. The requirement is that the facts be stated, not mere conclusions of law."

The allegation by the Attorney-General that the agreement or combination entered into by respondents is an illegal usurpation and an abuse and perversion of corporate power, is merely a conclusion or presumption of law on the part of the pleader, and not being predicated upon facts set forth in the information, does not supply the lack of such definite facts as should have been specifically pleaded. [Schiffman v. Schmidt, 154 Mo. 204; Mallinckrodt Chemical Works v. Nemnich, 169 Mo. 388; Gibson v. Railroad, 225 Mo. 478; Lackawanna Coal & Iron Co. v. Long, 231 Mo. 605.]

If the law prohibited every kind of contract or traffic arrangements between respondents concerning the carrying of passengers or transportation of freight, then the information would be sufficient to charge a conspiracy in restraint of trade; but as a matter of fact the respondents may enter in many kinds of contracts with each other without violating

any statute, the common law or public policy of this
State.

Our laws fully recognize the power and right of
railroad companies to contract with each other concern-
ing the transportation of passengers and freight. By
sections 3083 and 3084, Revised Statutes 1909, it is
made the duty of the officers of said companies to furn-
ish the railroad and warehouse commissioners true
copies of all contracts made by them with other railroad
companies; and under those sections the railroad and
warehouse commissioners are required to deliver those
copies to the Attorney-General, who, upon inspection
thereof may, *if he finds that they contravene the law,*
proceed against such companies for the penalties pre-
scribed in section 3085, Revised Statutes 1909.

The Attorney-General is not confined to the in-
formation which he may receive under the provisions
of said sections 3083 and 3084, Revised Statutes 1909,
but may proceed against any transportation company
on information obtained from any other source.

Article 4, chapter 98, Revised Statutes 1909, em-
powers the Attorney-General to take testimony with-
out bringing suit to ascertain whether any corporation
in this State has exceeded or perverted its corporate
powers or entered into any kind of trust or other ille-
gal combination.

With these facilities at hand, there is no call for
the Attorney-General to inform against any corpora-
tion until he is possessed of the necessary information
to prefer a correct and specific charge.

By section 1831, Revised Statutes 1909, we are re-
quired to construe the laws of pleading liberally so as
to promote the substantial justice between the parties;
but we do not think the ends of justice will be pro-
moted by permitting the State or any other litigant
to call a defendant into court to answer for alleged
wrongdoing without specifically charging and inform-

ing him of the matters and things against which he must defend.

Informations charging conspiracies, frauds and similar offenses always call for a wide range of evidence, and in that class of cases courts should for their own protection compel litigants to present the issues upon which they rely in a clear, definite and concise manner, to the end that the courts may not be overwhelmed with irrelevant testimony. [20 Cyc., p. 97.]

In the instant case, no doubt a large number of contracts exist and are in force between respondents affecting and regulating the transportation of freight and passengers; and if we were to appoint a commissioner to take testimony under the information as filed, it would necessitate the investigation of all contracts which the sixteen respondents have entered into between themselves, and the taking of testimony concerning all such contracts as the Attorney-General may believe contravene the laws regarding trusts and conspiracies. Such an undertaking would probably consume years of time; and the redress which the State is entitled to if the respondents have violated the law, would thereby be delayed indefinitely.

We have examined all the cases cited by the learned Attorney-General in support of the sufficiency of his information. He cites the language used by this court in the case of State ex inf. v. Standard Oil Company, 218 Mo. l. c. 364, wherein we said: "It is also contended by counsel for respondents that the allegations of the information of the existence of the combination complained of are not sufficient to constitute a cause of action against them. If we correctly understand counsel, their contention is that the information in this case should be drawn with the same rules of strictness which are applicable to criminal indictments and informations. In other words, they contend that the information should state the facts which constitute the pool, trust or combination, and not

make the charge in general terms. It is the formation of and entering into the pool, trust or combination that constitutes the usurpation of corporate powers; and in such cases, according to the text-writers and adjudications, all that is necessary to be stated in the information is a general allegation of the facts constituting the misuser, non-user, or usurpation.''

Upon examining the information in the Standard Oil case, supra, we find that it contains allegations specifically reciting the substance of a contract between the Standard Oil and two other companies whereby they conspired to monopolize the business of selling oils in Missouri by dividing the territory between two of the conspirators so as to prevent competition, and by acting through a third party which pretended to be independent of the other two, but which in fact was working with them, to destroy the trade of all competitors in the sale of oils.

The language used in the Standard Oil case, supra, might upon first impression convey the idea that an information of this nature need not point out any of the terms of the alleged illegal contract or combination; but what was there said applied to the facts in that case, and furnishes no ground for upholding an insufficient information in this case.

It is a well-settled rule of law that the reasons or discussions of an appellate court in deciding a case are not precedents in other cases in which a different state of facts is at issue. [Koerner v. St. Louis Car Co., 209 Mo. 141.]

The case of State v. Dreany, 65 Kan. 292, 69 Pac. 182, is not in point here, because in that case the information recited the terms of the unlawful contract or combination, to-wit, a division of the net earnings between the conspirators.

Neither is the case of State v. Straw, 42 N. H. 393, in any wise like the one at bar, for in the Straw case, the information pointed out the unlawful acts

which the conspirators agreed to perform, to-wit; "to put up and maintain flash boards on a dam," so as to cause the overflow of complainant's lands.

The case of United States v. Gardner, 42 Fed. 829, is not in point, because there the alleged conspiracy was to commit a theft, which was a crime *malum in se*, and not a crime *malum prohibitum*, as in the case at bar.

The same is true of the case of Hazen v. Commonwealth, 23 Penn. 355, cited and relied on by the State.

The State also cites the case of State ex inf. v. Missouri Pacific Railway Company, 206 Mo. 40, wherein the doctrine was announced that in actions in the nature of *quo warranto* the pleadings are not governed by our general Code of Civil Procedure; but that doctrine is expressly repudiated in the more recent case of State ex rel. v. Grimm, 220 Mo. 483, l. c. 493 and 494. We think the Grimm case is fully sustained by authority and sound reason. It was concurred in by all the judges who participated in the opinion found at 206 Mo. 40, except the chief justice, who was then absent; and the Grimm case should be allowed to stand as the law of this State.

The case of Eel River Railroad Company v. State, 155 Ind. 433, likewise fails to support the contention of the State, for there the particular act of non-user, to-wit, the execution of a ninety-nine year lease with the right of perpetual renewal, was expressly charged in the information. [155 Ind. l. c. 457.]

The case of Chicago, Wilmington and Vermilion Coal Company v. The People, 214 Ill. 421, appears on its face to fully and directly support the sufficiency of the information now under consideration. In that case the charge of conspiracy was couched in the same general terms as in the case at bar, with no effort to set out the substance or particulars of the unlawful combination. However, the pleading in that case was

an indictment by a grand jury for violating a criminal statute of Illinois, and the laws of that State then in force, Revised Statutes of Illinois 1908, page 783. contained the following provisions:

"Every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct which states the offense in the terms and language of the statutes creating the offense."

It will thus be seen that the sufficiency of the indictment in the case last cited was measured by an entirely different rule of law than the one which governs pleadings in *quo warranto* in this State.

Rules of pleading announced by the appellate courts of other States are not a safe guide for measuring the sufficiency of pleadings in this State, for the obvious reason that every State has its own code which may be wholly unlike our own.

From what has been said it follows that the demurrers interposed by respondents to the information of the Attorney General in this case, must be sustained. It is so ordered. *Valliant, C. J.,* and *Ferriss, Graves* and *Lamm, JJ.,* concur; *Kennish, J.,* concurs in result only; *Woodson, J.,* in separate opinion also concurs in result.

## CONCURRING OPINION.

WOODSON, J.—I concur in the result reached in the majority opinion delivered herein, but not for the reasons therein stated.

Strictly speaking, in passing upon a demurrer to an information or indictment charging a conspiracy, the court should look solely to the information, or indictment, as the case might be, and the demurrer thereto; but where, as here, the entire argument, and I might add, where counsel for all the parties practically admit in open court, that the real crime committed and intended to be charged in the information was not

a conspiracy to do an unlawful thing, as charged by the letter of the information, but the intention was to charge an unlawful conspiracy to do a lawful thing, then it would be idle to treat the information as though it charged a conspiracy to do an unlawful thing, whereas the fact is, as above stated, the intention was to charge an unlawful conspiracy to do a lawful thing. Consequently I am going to treat the information in the sense that it charges an unlawful conspiracy to do a lawful thing, to-wit: That the respondents entered into and formed an unlawful conspiracy to fix certain rates for the transportation of passengers in this State, not to exceed three cents per mile, which under the statutes of this State, as held by the Federal courts, are lawful rates.

In the light of these preliminary observations, I concur only, as previously stated, in the result reached by the majority opinion, but not for the reason therein assigned, namely, that an information charging a conspiracy to do an unlawful thing, in order to be good, must set forth the terms or means by which the unlawful end is to be accomplished.

In my opinion good pleading only requires that such a conspiracy should be charged in general terms. The authorities seem to be uniform in holding that when a conspiracy is formed and entered into by two or more parties, for the purpose of doing an unlawful thing, then it is unnecessary to set out in the information or indictment the terms of the conspiracy, or the means employed by which the end is to be accomplished. But if the end in view is a lawful purpose, and the conspiracy only becomes criminal by reason of the unlawful means whereby it is to be accomplished, then it becomes necessary to show such criminality by setting out such unlawful means. [State ex rel. v. Standard Oil Co., 218 Mo. l. c. 367, and cases cited.]

In the case at bar, the conspiracy entered into by and between the respondents was to do a lawful thing, by unlawful means, namely, to fix passenger rates not in excess of those authorized to be charged by the laws of the State.

If each and all of the respondents were authorized by law to charge as high or higher rates than those fixed by the conspiracy, then clearly those rates are legal; but the crime involved in the conspiracy consists, not of the rates fixed, but in the unlawful agreement by which those lawful rates were fixed and agreed to.

That argument destroyed competition between the common carriers of the State, and prevents one company from charging a lesser rate for the same service than another might be willing to charge, were it not for the existence of such agreement.

Clearly the traveling public is entitled to that competition, and the companies have no right to deprive it of that right by any kind of an agreement among themselves. It is true, that each and all of them could lawfully, for itself, fix rates at three cents a mile, and no one would have any right to complain, but they cannot lawfully do so collectively.

Under those facts, according to the rules of pleadings previously stated, the terms of the unlawful agreement fixing lawful rates by means of the unlawful conspiracy should have been charged in the information.

My learned associate who wrote the majority opinion in this case misconceives the facts of the Standard Oil case, supra, and for that reason errs in his conclusion as to the ruling there made. There the respondents were charged in the information with entering into a conspiracy to do a number of unlawful things and not, as here, to do a lawful thing by unlawful means.

According to the rule before announced, and according to the ruling in the Standard Oil case, it was

not necessary in that case to set out the terms or character of the conspiracy, but in the case at bar the nature and terms of the conspiracy should be stated.