STATE OF MISSOURI on the Information of ROYLE ELLIS, Prosecuting Attorney of Barry County, at the Relation of CHARLES PATTERSON and CHARLES VAUGHN, Relators, v. DR. L. H. FERGUSON, Mayor of the City of Monett.—65 S. W. (2d) 97.

Division One, October 19, 1933.

*A. R. Dunn* for relator.

*L. W. Eubanks* and *D. S. Mayhew* for respondent.

HAYS, J.—Royle Ellis, Prosecuting Attorney of Barry County, by information in the nature of a *quo warranto*, at the relation of two other individuals designated, invokes the original jurisdiction of this court and seeks thereby to oust the respondent from the office of mayor of the city of Monett, a city of the third class, and from the exercise of the franchises and privileges of said office. To our alternative writ the respondent for his return demurred. The cause was by stipulation of the parties submitted on said writ and return.

The charges in the information are that respondent is the duly elected, qualified and acting incumbent of said office and by virtue thereof has full charge and management of the city waterworks system of said city, with authority to employ and appoint the ordinary employees to operate said system; that by virtue of his said office respondent is authorized to vote for and àppoint the city collector of said city and did, in the exercise of such authority, in April, 1932, employ and appoint to the position of pumper for said water system one Carrol Cox, who was at said time a first cousin of respondent; that said Cox has retained said position since the date of his appointment; and further that in connection with the commissioners of said city respondent did vote for and appoint one Milburn Walker, a second cousin to respondent by marriage, to the office of city collector; and that respondent has since such employments were made continued to hold and usurp the office of mayor of the city of Monett, a city of the third class operated under the commission form of government, and to exercise the functions and duties of said office without legal warrant,—all in violation of Section 13 of Article 14 of the Constitution of the State. The information is signed by said Ellis, as prosecuting attorney, and to it is appended his oath.

The grounds of the demurrer are essentially (1) That the information fails to set forth any special interest in the persons named as relators; (2) that the information fails to show that the respondent is an officer of the State or any political subdivision thereof within the contemplation of Article 14, Section 13 of the Constitution. The demurrer otherwise admits the matters charged in the information.

1180

█ The first objection stated is well taken. In the heading and opening statement of the information it appears that the proceeding was ostensibly instituted in behalf of persons designated as relators, but nothing is stated in the body of the information with reference to the purported relators and no facts tending to show that they have any special interest in the case. Elementary rules of pleading require that such facts be stated in the information before a purported relator can have any standing in court as a relator in a proceeding such as this. [State ex inf. v. Heffernan, 243 Mo. 443, 148 S. W. 90; State ex rel. Pickett v. Cairns, 305 Mo. 333, 265 S. W. 527.] But it does not follow that the demurrer must be sustained on that ground. █ The words indicating that the proceeding was one upon relation and designating the relators as such may be treated as surplusage, and if enough remains in the information to state a cause of action the demurrer should be overruled. The information was signed by the prosecuting attorney in his official capacity, with jurat appended. It will be observed that after the elision of the matter just stated the information contains sufficient allegations to state a cause of action in the nature of *quo warranto* and to show that it was brought by the prosecuting attorney in his official capacity as the representative of the State and for the protection of a public interest. [State ex rel. Attorney-General v. Railroad, 240 Mo. 35, 144 S. W. 1088.] The information is therefore sufficient in form and substance, and filed by a proper official, to invoke our original and constitutional jurisdiction to issue writs of *quo warranto*. [Constitution, Art. VI, Sec. 3; State ex rel. Brown, Prosecuting Attorney, v. McMillan, 108 Mo. 153, 18 S. W. 784; State ex rel. Brown, Prosecuting Attorney, v. Town v. Westport, 116 Mo. 582, 605, 22 S. W. 888; State ex rel. Weed v. Meek, 129 Mo. 431, 435 (bottom), 31 S. W. 913.]

█ We cannot agree to the second contention of the respondent, viz., that it is not shown that respondent is an officer of a political subdivision of the State.

Respondent grounds this phase of his demurrer upon Article VI, Section 12 of the Constitution, citing in support Smith v. City of Sedalia, 228 Mo. 505, 128 S. W. 735, and City of St. Joseph v. Georgetown Lodge, etc., 8 S. W. (2d) 978. In the first of which cases it was decided that the city of Sedalia, and in the second the city of St. Joseph was not a political subdivision within the constitutional provision aforesaid. Both those cases involved appeals to this court. In them the question of the jurisdiction of this court on appeal was involved and that question was dependent upon the construction of the phrase "title to an office under this State" as contained in said constitutional provision. With respect to the meaning of the phrase our court en banc in the case of State ex inf. Otto, Atty.-Gen., ex rel. Bales v. Hyde, 317 Mo. 714, l. c. 716, 296 S. W.

775, said: "This clearly means a case where the party holds the office in question under the statutes of this State, in contradistinction of a party who holds an office under a municipality or the ordinances thereof." The meaning of said constitutional provision as regards the appellate jurisdiction of this court is not involved in the instant case and has no application here except to define specifically the class of offices to which it applies and to distinguish such class from the class involved in the proceeding before us. [See. State ex rel. Atty.-Gen., v. Whittle, infra.] The constitutional provision here involved is Section 13 of Article 14, commonly known as the nepotism section, which is directed to officers or employees of *political subdivisions of the State,* thus:

"Any public officer or employee of this State or any political subdivision thereof who shall by virtue of his said office or employment have the right to name or appoint any person to render service to this State or to any political subdivision thereof, and who shall name or appoint any relative within the fourth (4th) degree either of consanguinity or affinity, shall thereby forfeit his or her office or employment."

This section is self-enforcing as has hitherto been held by our court. [State ex inf. Norman v. Ellis, 325 Mo. 154, 28 S. W. (2d) 363.] It has recently been under construction by our court in the case of State ex inf. McKittrick, Atty-Gen., v. Whittle, 333 Mo. 705, 63 S. W. (2d) 100, wherein it was held that school districts are political subdivisions of the State, and school directors are public officers within the contemplation and meaning of said nepotism section.

The first question in this connection is: Is the mayor of a city of the third class a public officer? The answer must be yes. A public office is well defined to be:

" 'The right, authority and duty, created and conferred by law, by which, for a given period, either fixed by law, . . . an individual is invested with some portion of the sovereign functions of government, to be exercised by him, for the benefit of the public;' " and a public officer is one who receives his authority from the law and discharges some of the functions of government. [Hastings v. Jasper County, 314 Mo. 144, l. c. 149, 150, 282 S. W. 700.]

The statute makes the respondent mayor a public officer:

"The following officers shall be elected by the qualified voters of the city, and shall hold their offices for two years, and until their successors are duly elected and qualified, to-wit.: A mayor, marshal, attorney, police judge, assessor, collector and treasurer . . ." [R. S. 1929, sec. 6723.]

He is invested by statute with power to appoint subordinate officers, as he may be authorized by ordinances to appoint, with the approval and consent of majority of the members of the city council. This power of appointment, also the exercise thereof by the making

of the appointments in question and the relation of the appointees to the respondent, are all conceded by the demurrer.

Is a city of the third class a political subdivision? A standard work on municipal corporations so defines it in the following language:

A municipal corporation, in its strict and proper sense is a *body politic* and corporate constituted by the inhabitants of a city or town for the purposes of local government thereof. Municipal corporations as they exist in this country are *bodies politic* and corporate of the general character above described, established by law as an agency of the State to assist in civil government of the country, but chiefly to regulate and administer the local or internal affairs of the city, town or district which is incorporated." [1 Dillon (5 Ed.), sec. 31.] (Italics ours.)

Section 47 of Article IV of the original Constitution, prohibiting the lending of credit, refers to counties, cities, towns or townships as *"political* corporations or *subdivisions of the State."* (Italics ours.)

We approve the following observations made in Kinney v. Astoria, 108 Ore. 514, 528, 217 Pac. 840:

"Pure municipal corporations, such as cities, are merely instrumentalities of the State established for the convenient administration of local government; they are state governmental agencies; they are auxiliaries of the State for the purpose of local self-government; they are mere political subdivisions of the State created by authority of the State for the purpose of exercising a part of its powers."

Obviously, said appointee Cox, the first cousin, was within the express prohibition, of the nepotism section of the Constitution quoted supra. Respondent by making said appointment was thereby guilty of abuse of his power and authority in the premises whereby he has forfeited his right and title to said office and its franchises and is unlawfully usurping the powers and prerogatives thereof. Therefore, judgment of ouster from said office should be entered against him and our final writ of ouster should issue. It is so ordered. All concur.