IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-09-00222-CV

 

Lowell Merritt,

                                                                                    Appellant

 v.

 

Robert Davis,

                                                                                    Appellee

 

 

 



From the 380th District
Court

Collin County, Texas

Trial Court No. 380-01387-2009

 



OPINION ON REHEARING










 

            Appellant Lowell Merritt
complains on rehearing that this Court improperly dismissed his venue appeal
because it is not an “interlocutory” appeal.  Merritt refers to the following
quotation from In re Team Rocket, L.P., 256 S.W.3d 257 (Tex. 2008)
(orig. proceeding), to support his position: “The only remedy afforded by the
Legislature when a party loses a venue hearing is to proceed with trial in the
transferee county and appeal any judgment from that court on the basis of
alleged error in the venue ruling.”  Id. at 261.  According to Merritt,
because he may appeal “any judgment” from the transferee court, he may
in this instance appeal the Collin County district court’s order denying his
motion to return his lawsuit to the McLennan County district court.  We
disagree.  

            Under section 15.064 of the
Civil Practice and Remedies Code, Merritt cannot challenge the McLennan County district court’s venue ruling by appeal until the Collin County district court
has rendered a final judgment on the merits of Merritt’s lawsuit against the
appellee.  See Tex. Civ. Prac.
& Rem. Code Ann. § 15.064 (Vernon 2002).  In the words of the
Supreme Court, “[T]he law requires a party to wait until a final judgment is
entered in a case to appeal an erroneous venue ruling.”  Am. Home Products
Corp. v. Clark, 38 S.W.3d 92, 95 (Tex. 2000).  And looking more closely at
the case cited by Merritt, a party who “loses a venue hearing” must first “proceed
with trial in the transferee county” on the merits of the lawsuit,
and then “appeal any judgment” rendered following the trial on the merits.  See
Team Rocket, 256 S.W.3d at 261 (emphasis added).  Accordingly, Merritt
cannot challenge the McLennan County district court’s venue ruling by appeal
until after the trial on the merits is conducted by the Collin County district court and the latter court renders a final judgment on the merits.

            Nevertheless, Merritt argues
that this delay renders Rule of Appellate Procedure 44.4 “moot.”  Again, we
disagree.  

            Rule 44.4 provides:

(a) Generally.   A court of appeals must
not affirm or reverse a judgment or dismiss an appeal if:

 

(1) the trial court’s erroneous action
or failure or refusal to act prevents the proper presentation of a case to the
court of appeals; and








(2) the trial court can correct its
action or failure to act.

 

(b) Court of Appeals Direction if Error
Remediable.   If the circumstances described in (a) exist, the court of appeals
must direct the trial court to correct the error.  The court of appeals will
then proceed as if the erroneous action or failure to act had not occurred.

 

Tex. R. App. P.
44.4.

            First, Rule 44.4 does not
apply here because neither the McLennan County district court nor the Collin County district court has acted or failed or refused to act in some manner which
prevents Merritt from presenting his appeal.  See id. 44.4(a)(1).  Rather,
section 15.064(a) of the Civil Practice and Remedies Codes prevents Merritt
from presenting his appeal at this time.

            More fundamentally, when a
procedural rule like Rule 44.4 conflicts with a statute, the statute controls. 
See Johnstone v. State, 22 S.W.3d 408, 409 (Tex. 2000) (per curiam); In
re Chu, 134 S.W.3d 459, 466 (Tex. App.—Waco 2004, orig. proceeding). 
Therefore, even if Rule 44.4 applied, which it does not, the provisions of section
15.064 would control and would prohibit any appeal on the venue issue until
after a final judgment on the merits has been rendered by the Collin County district court.

Accordingly, Merritt’s motion for
rehearing is denied.

 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

(Chief
Justice Gray concurring with note)*

Rehearing denied

Opinion
delivered and filed August 26, 2009

Do not publish

 

*           (Chief
Justice Gray concurs in the judgment which dismissed the appeal for want of
jurisdiction only and does not join either the opinion or the opinion on
rehearing.  A separate opinion will not issue.  He notes, however, that the
most basic jurisdictional problem in this proceeding is that it is an effort to
appeal an order of a Collin County district court.  Collin County is not in this Court’s jurisdiction.  Tex. Gov’t
Code Ann. § 22.201(k) (Vernon Supp. 2008).)






span style="font-family: 'CG Times', serif">This defense of justification or necessity is not available if the risk of eminent [sic] harm
reasonably appreciated by the actor has ceased to exist at the time the alleged unlawful
conduct occurred.
 
Russell argues that the Court’s instruction was not part of the necessity definition but was instead
the Court’s opinion of the testimony presented, and thus, a violation of Article 36.14. See Tex.
Code Crim. Proc. Ann. art. 36.14 (Vernon Supp. 2001). In particular, Russell contends that
the Court’s expansion of the definition is in essence: (1) expressing an opinion as to the weight
of the evidence; (2) summing up the testimony; and/or (3) discussing the facts or an argument in
the charge calculated to arouse the sympathy of the jury. In response, the State argues that the
instruction added by the Court was consistent with the definition of necessity and it was not the
trial court’s opinion of the testimony. 
      The choice of language by the trial judge, though trying to clarify the statute, is inappropriate
if it draws particular attention to the evidence regarding the defendant’s state of mind. Even a
seemingly neutral instruction about a particular type of evidence constitutes an impermissible
comment on the weight of the evidence because such an instruction singles out a particular piece
of evidence for special attention. See id.; Zani v. State, 758 S.W.2d 233, 245 (Tex. Crim. App.
1988). We find that the trial court impermissibly expressed an opinion on the weight of the
evidence in violation of Article 36.14. See Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon
Supp. 2001).
Harm Analysis
      We must now determine whether sufficient harm resulted from the error to require reversal. 
The manner in which the jury charge error is reviewed on appeal is prescribed by Texas Code of
Criminal Procedure Article 36.19 and Almanza. Almanza v. State, 686 S.W.2d 157 (Tex. Crim.
App. 1984); Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon Supp. 2000). The degree of harm
that must be present to require reversal depends upon whether the error was preserved or
unpreserved. Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). If the error in the
charge was the subject of a timely objection in the trial court, then reversal is required if the error
is "calculated to injure the rights of defendant," which means no more than that there must be
some harm to the accused from the error. Ovalle v. State, 13 S.W.3d 774 (Tex. Crim. App.
2000). In other words, an error which has been properly preserved by objection will call for
reversal as long as the error is not harmless. Id.
      In determining whether the error was harmful and reversal is required, an evidentiary review
must be conducted, as well as review of any part of the record as a whole that may illuminate the
actual, not just theoretical, harm to the accused. Arline v. State, 721 S.W.2d 348, 351 (Tex.
Crim. App. 1986); Almanza, 686 S.W.2d at 174. The actual degree of harm must be assayed in
light of the entire jury charge, the state of the evidence, including the contested issues and weight
of probative evidence, the argument of counsel and any other relevant information revealed by the
record of the trial as a whole. Ovalle, 13 S.W.3d 774. If any harm is found after conducting this
review, then reversal is required. 
    Because Russell preserved error by objecting to the additional instruction, we analyze the case
under the "some harm" test set forth in Almanza. Almanza, 686 S.W.2d. at 171. Under the
"some harm" test, the presence of any harm is sufficient to require reversal. Abdnor v. State, 871
S.W.2d 726, 732 (Tex. Crim. App. 1994). The Court of Criminal Appeals has eliminated any
suggestion that the defendant has a burden of proof to establish harm from the improper
instruction. See Ovalle v. State, 13 S.W.3d 774, 787 (Tex. Crim. App. 2000). The Court stated
the applicable procedure as follows: 
We do not resolve the issue by asking whether the appellant met a burden of proof to
persuade us that he suffered some actual harm, as the dissent would have it. No party
should have a burden to prove harm from an error, and there ordinarily is no way to
prove "actual" harm. Burdens and requirements of proving actual facts are appropriate
in the law of evidence, but they have little meaning for the harmless-error decision.
 
In evaluating what effect, if any, an error had on the jury's verdict, the appellate court
may look only to the record before it. The function of a party carrying the burden is
simply to suggest, in light of that record, how prejudice may or may not have occurred. 
At that point, the court makes its own assessment as to what degree of likelihood exists
as to that prejudicial or non-prejudicial impact and then applies to that assessment the
likelihood-standard of the particular jurisdiction.

Id. 
      The nature of the error is an expansion or further elaboration of the statutory definition of
necessity. Reviewing the arguments of counsel during the guilt/innocence phase, the State did
make one reference to the erroneous instruction that Russell complains of on appeal. However,
Russell also referred to this instruction in his closing, placing more emphasis on the instruction
than the State. Defense counsel approached the erroneous instruction strategically. He argued:
...we’re going to walk toward this concept of necessity. And like I say when you get the
jury charge, the definition is outlined for you and everything, I’m not going to read it to
you and everything, but there is one paragraph, this last section says (reading) “This
defense of justification of necessity is not available if the risk of imminent harm is
reasonably appreciated by the actor has ceased to exist at the time of the alleged unlawful
conduct.” And the reason I’m putting that in there and everything is because I want you
to look at that because for you to deal with the defense of necessity, this charge first of
all literally places you in the person of being a reasonable person, a prudent man that
probably should be a prudent person, but it says prudent man, but that would include you
ladies too. Okay. You need to get in the mind set and think what would be reasonably
prudent if you were that individual, Fred Russell, at 3:00 a.m. on the morning of
December 14th, 1997 on 31 going east.

      We must next examine the state of the evidence at trial, including the contested issues and
weight of probative evidence. The critical issue at trial was whether Russell was acting out of
necessity at the time he fled the scene of the accident because he did not deny that he was involved
in the accident with the victim. He sought to justify his failure to stop and render aid with the
defense of necessity based upon his fear of Cavendar. However, the evidence establishes that
notwithstanding the violent nature of the wreck, and that Cavendar was lying motionless in the
road when Russell left the scene, Russell made no effort to report the accident or seek help for
Cavendar. The jury could have easily determined that even if Cavendar had exhibited a weapon
and that Russell was justified in being fearful of staying at the scene and going to Cavendar’s side
to aid him, it did not excuse Russell from reporting the required information or getting help for
Cavendar by reporting the accident from a remote location. Reviewing the charge as a whole,
including the erroneous instruction, the jury was otherwise properly instructed on the necessity
defense. Therefore, based upon a close inspection of the record, we cannot say that the error
caused Russell some harm. Accordingly, we overrule Russell’s first issue.
Issue 2: Motion for Mistrial
      In his second issue, Russell argues that the trial court erred in not granting his request for
mistrial following prosecutorial misconduct in connection with an improper question by the
prosecution. The alleged error occurred when the prosecutor asked Russell if he had a prior
conviction for “failure to stop and render aid.” Russell responded in the affirmative and his
counsel objected. Then there was a hearing outside the presence of the jury. 
      During the hearing, Russell’s counsel argued that it was a misnomer and that the prior
conviction was for the failure to provide information, which is a misdemeanor and not the failure
to stop and render aid. The State argued impeachment on the grounds that it was a crime of moral
turpitude. After the hearing, defense counsel also requested that the court instruct the jury to
disregard the question and answer and moved for a mistrial. The trial court sustained Russell’s
objection and the court gave the jury an instruction to disregard as follows:
Members of the jury, before I go further, before I recessed there was a question asked
and maybe some preliminary talk about an alleged or purported conviction of the
defendant with respect to an offense that was, a previous offense that was defined either
stop, or failure to stop and render aid or failure to stop and give information. And the
Court after some lengthy hearings and research has found that that question or that
matters with respect, any matter with respect to that is, is improper. You are instructed
not to consider any of those questions, responses, or any document which may have been
offered with respect to such a matter for any purpose. Everybody understand? Okay. 
Let’s proceed. You may come back to the witness stand. 

The trial court then denied Russell’s motion for mistrial.
      When the trial court sustains an objection and grants a request for an instruction for the jury
to disregard but denies a motion for mistrial, the issue becomes whether the trial court erred in
denying the mistrial. Carlock v. State, 8 S.W.3d at 723. Ordinarily, a prompt instruction to
disregard will cure the prejudicial effect associated with an improper question and answer, even
one regarding extraneous offenses. Ovalle v. State, 13 S.W.3d 774 (Tex. Crim. App. 2000). The
mere asking of an improper question will not constitute reversible error unless the question results
in obvious harm to the accused. Brown v. State, 692 S.W.2d 497, 501 (Tex. Crim. App. 1985)
(citing Yarbrough v. State, 617 S.W.2d 221, 228 (Tex. Crim. App. 1981). 
      An instruction to disregard will be presumed effective unless the facts of the case “suggest[s]
the impossibility of withdrawing the impression produced on the minds of the jury[.]” Waldo v.
State, 746 S.W.2d 750, 754 (Tex. Crim. App. 1988)(citing Hatcher v. State, 43 Tex. Crim. 237,
65 S.W.2d 97, 98 (1901); Veteto v. State, 8 S.W.3d 805 (Tex. App.—Waco 2000, pet. ref’d). 
The effectiveness of a curative instruction is determined on a case-by-case basis. Id.; Fletcher v.
State, 852 S.W.2d 271, 275 (Tex. App.—Dallas 1993, pet. ref’d). Although not expressly
adopted as exhaustive or definitive, the Court of Criminal Appeals has relied on several factors
to determine whether an instruction to disregard cured the prejudicial effect. Waldo, 746 S.W.2d
at 754. They are as follows:
      1. The nature of the error;
      2. The persistence of the prosecution in committing the error;
      3. The flagrancy of the violation;
      4. The particular instruction given;
      5. The weight of the incriminating evidence; and
      6. The harm to the accused as measured by the severity of the sentence. 
Id. We likewise rely on these factors. Veteto, at 805; Mendoza v. State, 959 S.W.2d 321, 324
(Tex. App.—Waco 1997, pet. ref'd).
      Applying these factors to the case at hand, any prejudice caused by the prosecution’s question
was cured by the trial court’s instruction. The prejudicial effect of the question by the prosecution
was not of such a nature that it could not be cured by an instruction to disregard. The particular
instruction given adequately instructed the jury not to consider the prosecution’s improper question
and Russell’s answer for any purpose. Nor can it be argued the prosecution was persistent in
committing the error or that the violation was fragrant. The improper question was only asked
once. Although there was evidence introduced for the defense of necessity, the totality of the
evidence supports Russell’s conviction for the failure to stop and render aid. After reviewing the
record in this case and applying the factors set out in Veteto, we conclude that the court’s
instruction effectively cured the prejudicial effect, if any. Russell’s second issue is overruled.
Conclusion
      Having overruled Russell’s two issues, we affirm the judgment of the trial court.



                                                                                 TOM GRAY
                                                                                 Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
      (Justice Vance dissenting)
Affirmed
Opinion delivered and filed on March 7, 2001
Publish