THE STATE *ex rel.* WALKER, *Attorney General*, **v.**
TALBOT *et al.*

### In Banc, June 18, 1894.

Corporation: ABUSE OF FRANCHISE: QUO WARRANTO.    Where the state
assails a corporation by *quo warranto* for illegal acts, it must charge
and prove the abuse or misuse of its franchises relied upon as grounds
of forfeiture.

*Quo    Warranto.*

DEMURRER TO RETURN OVERRULED.

*R. F. Walker*, Attorney General, for the state.

*Lyne S. Metcalf, Jr.*, and *Chester H. Krum*, for
respondents.

MACFARLANE, J.—This is an original proceeding by
*quo warranto* against respondents as the officers who
assume to manage the affairs of a corporation purport-
ing to have been organized under the laws of the state
of Missouri, under name of the Guarantee Investment
Company of Nevada, Missouri.    The legality of the
incorporation is questioned by the state.    The infor-
mation contains the same charges as are made against
the respondents in the case of *State ex rel. Attorney
General v. Corkins et al., ante*, p. 56.

In this case respondents make return to the infor-
mation, in which they declare that they are manag-
ing the business affairs of the corporation named
under a certificate of incorporation granted them by

the secretary of state after a full and strict compliance with all the requirements of the laws of the state authorizing the organization of corporations, and that they are acting in strict compliance with the authority of said certificate and not otherwise. They make this further allegation:

"Farther making return, the said defendants show that subsequently to the issuance of said certificate of incorporation to the Guarantee Investment Company, as aforesaid, and while the said corporation was carrying on in this state the business of selling, disposing of, and paying bonds issued on the installment plan, the said corporation, together with all others of like incorporation under the laws of this state, was confirmed, ratified and recognized by the state of Missouri in its existence, franchise, capacity and powers as a corporation by reason and by means of an act of the general assembly entitled 'An act to regulate bond investment companies and companies organized to place or sell bonds, certificates or debentures on the installment or partial payment plan' and approved April 21, 1893; that said statute became operative as a law on the twenty-first day of June, 1893, and that within thirty days thereafter, to wit, on the nineteenth day of July, 1893, the said Guarantee Investment Company complied with the terms and requirements of the said statute by depositing with the treasurer of the state of Missouri securities in the sum of one hundred thousand dollars which were approved and accepted by the said treasurer as good and sufficient, and that the deposit still remains with said treasurer intact and unimpaired."

To this return relator interposes a general demurrer.

The demurrer raises two questions: *first*, whether article 8 of chapter 42 authorizes an incorporation

for the purpose of engaging in, and conducting the business of "issuing bonds to be paid for by purchasers thereof, in monthly installments, and to be redeemed by said corporation in such manner and at such times as might be prescribed by it;" and, *second*, if the corporation was not originally authorized, whether it was validated by the act of April 21, 1893.

Inasmuch as we have held in the case of *State ex rel. v. Corkins*, *ante*, p. 56, that the organization was authorized under subdivision 11 of section 2771, article 8, of chapter 42, of the general laws of the state, there is no occasion to consider the effect the statute might have had upon an unauthorized incorporation.

It may be remarked, however, in addition to what was said in the opinion in the other case, that this act clearly recognizes the right to incorporate under the general laws, for the purposes designated in the certificate of incorporation, and is a legislative interpretation of the general law which is in harmony with that given it by us in the *Corkins case*.

It may be said further that it has been suggested that when the validity of an incorporation is questioned by the state, it is incumbent upon those assuming to act under it, to show, not only a valid incorporation, but also that the business transacted thereunder is lawful and is conducted in a lawful manner. We do not think the question suggested can be sustained. The certificate, if issued under authority of law, *prima facie* confers the right to conduct the business therein authorized, and in order for the state to attack the corporation for acts of its officers *ultra vires*, or contrary to the constitution or laws of the state, it devolves upon it to charge and prove the abuse or misuser of its franchises relied upon as a ground of forfeiture. 2 Spelling on Extraordinary Relief, secs. 1850, 1851, 1860.

It is said further that the purposes for which the

corporation was organized, as they appear upon the face of the pleadings, show that the business proposed is contrary to the laws of the state and their policy, and that it is therefore incumbent on the respondents to show that the business conducted by them is lawful. We are unable to see that there is even a suggestion upon the face of the certificate that the proposed business is illegal, either in its character, or the manner of conducting it. There is nothing illegal in the issuance of bonds nor selling the same upon installments, if done in a lawful manner, and the manner and time of the redemption or payment should naturally be left to the corporation issuing them. There is no suggestion on the face of the pleadings that respondents are abusing or misusing the franchises of the corporation for the purposes of conducting a lottery or other unlawful business, and, until such abuse or misuser is shown, we can not interfere to declare a forfeiture.

It appearing from the pleadings that the corporation was legally organized and empowered to transact the business named in the certificate, and there being no charge of misuser of the franchises with which it is invested, the demurrer to the return must be overruled.

BRACE, J., does not sit; SHERWOOD and BURGESS, JJ., dissent; BLACK, C. J., and BARCLAY and GANTT, JJ., concur.