STATE OF MISSOURI EX INF. FRANKLIN MILLER, Circuit Attorney of the City of St. Louis, Relator, v. ST. LOUIS UNION TRUST COMPANY, a Corporation.—74 S. W. (2d) 348.

Court en Banc, August 27, 1934.

*Franklin Miller* and *Abbott, Fauntleroy, Cullen & Edwards* for relator; *Irl B. Rosenblum* and *Cullen, Fauntleroy & Edwards* of counsel.

848

*Bryan, Williams, Cave & McPheeters* for respondent.

*Maurice J. O'Sullivan, Francis C. Downey* and *J. Francis O'Sullivan* for Kansas City Bar Association.

*Roy D. Williams, Allen McReynolds, R. E. Culver* and *Mercer Arnold* for Missouri Bar Association.

*Montgomery, Martin & Montgomery, amicus curiae.*

852

*Alfred M. Seddon, James E. Goodrich, William O. Thomas, Ryland, Stinson, Mag & Thompson* and *Bowersock, Fizzell & Rhodes, amici curiae.*

ATWOOD, J.—This is an original proceeding by information in the nature of *quo warranto.* The information states that respondent, St. Louis Union Trust Company, "is a corporation organized under the statutes of the State of Missouri relating to trust companies, for the purpose of engaging in a general trust company business, and, being so organized, it is subject to the statutes of the State and has no power or authority under its charter except such as is conferred upon it by said statutes of Missouri, and it had and has no power or authority whatsoever to engage in the 'practice of law,' or to conduct a 'law business.'" The information further states that said trust company "has for a long time continuously and willfully violated the laws of this State, and has unlawfully assumed and usurped franchises and privileges, to-wit, to practice law and do law business, not granted to it by the State laws, in the following particulars, to-wit:

"(1) Said Trust Company is and has long been engaged in the City of St. Louis and elsewhere in Missouri in the business of advertising for, and soliciting through salaried employees, the business of drafting and writing wills for its patrons and customers, and in actually drafting and writing such wills, for a valuable consideration, in which it is named as trustee or executor, or both; and also in the business of giving legal advice and counsel to its patrons and customers, for a valuable consideration, about the execution of wills, and about the legal effect of the various clauses therein and about the powers and duties of trustees, their liability for improper investments of trust funds, the permissible duration of trusts created by will, the liability of the proposed trust estate or its beneficiaries for income, inheritance and general property taxes and probable amount of such taxes; such advice and counsel being often given by respondent at times and under circumstances when its own pecuniary interests in the proposed trust are in direct conflict with its duty to its patrons and customers who receive the advice.

"(2) Said Trust Company is and has long been engaged in the City of St. Louis and elsewhere in Missouri in the business of writing, drafting, and preparing, for a valuable consideration, contracts for

life insurance trusts in which it is named as trustee or executor, or both, creating trust estates out of funds to be collected at the death of the donor on life insurance policies carried on the donor's life, and giving legal advice and counsel, for a valuable consideration, to the donor of the trust as to the legal effect of the various clauses in the proposed trust agreement, the duties of the trustee thereunder and its liability for improper investments of trust funds; and as to the legal limit for the duration of such trusts, as to the liability of the proposed trust estate for income, inheritance and general property taxes. and in publicly advertising for and openly soliciting such business by its salaried agents and employees; such advice and counsel being often given by respondent at times and under circumstances when its own pecuniary interests in the proposed trust are in direct conflict with its duty to its patrons and customers who receive the advice.

"(3) Said Trust Company is and has long been engaged in the business of writing, preparing and drafting, for valuable consideration, 'living trust agreements' by which the donor creates a trust estate to take effect in his lifetime, with the said Trust Company as trustee therein, and in giving legal advice and counsel, for a valuable consideration, to the donor or creator of the trust as to the legal effect of the language used in the various clauses thereof, as to the power of revocation, the power and authority of the said trustee thereunder, and its liability for improper investments. the possible duration of such a trust, and its effect upon the liability of the donor, during his lifetime, and of his beneficiaries after his death, for income taxes, general property taxes and inheritance taxes; such advice and counsel being often given by respondent at times and under circumstances when its own pecuniary interests in the proposed trust are in direct conflict with its duty to its patrons and customers who receive the advice.

"And said activities of respondent are outside its charter powers and in violation of the statutes (particularly Sections 666 and 667 of Rev. Stat. 1919) and laws of the State of Missouri, to the great damage and prejudice of the State of Missouri."

The prayer of the information is that due process of law may be awarded against such trust company "in this behalf to make answer to the aforesaid charges and to show by what authority it claims to have, use and enjoy the rights, privileges and franchises aforesaid; and if it be found to have usurped rights and privileges not conferred upon it, or warranted by law, that said corporation from henceforth be required to cease and desist from the aforesaid illegal practices and to conduct its business according to law, on penalty of the forfeiture of its corporate charter and franchise."

Our order to show cause was duly issued and respondent filed

854

answer and return admitting that it "is a corporation, organized under the statutes of the State of Missouri relating to trust companies, located at the city of St. Louis, and that it is and for many years has been engaged in a general trust company business;" denying "that it is violating, or ever has violated, willfully or otherwise, any of the laws of the State of Missouri;" and denying "that it has assumed or usurped any franchises or privileges not lawfully granted to it." Respondent also specifically denies the allegations contained in paragraphs numbered 1, 2 and 3 of relator's information, and avers "that it has never given, for a valuable consideration, legal advice and/or counsel to anyone or any subject."

Under Section II of its answer and return respondent pleads that ever since its organization "it has been engaged in the general trust company business at the city of St. Louis, Missouri, and that as such trust company it has the power and authority to transact all such business as is expressly provided by said statutes and the implied authority to do all things reasonably or necessarily incident to the performance of its general business as a trust company.

"That as such trust company it is specifically authorized by its charter and the laws of the State of Missouri to receive money in trust, to accept and execute all trusts and perform such duties of every description as may be committed to it by any person or persons whatsoever or any corporation, and to act as assignee, receiver, trustee and depositary, and to accept and execute all such trusts and perform such duties of every description as may be committed or transferred to it by order or judgment or decree of any of the courts of record of this State or of any other state or of the United States; to take, accept and hold by gift, grant, assignment, transfer, devise or bequest of any person or corporation any real or personal property in trust, and to execute and perform any and all such legal and lawful trusts in regard to same upon the terms, conditions, limitations and restrictions which may be declared imposed upon, established or agreed upon in and by any such gift, grant, assignment, transfer, devise or bequest; and to act as agent or attorney in fact for any person or corporation in the management or control of real and personal property and the sale or conveyance of the same and for the investment of money; and to act as attorney in fact or agent of any person or corporation for any lawful purpose, and to accept from and execute trusts for married women in respect to their separate property, whether real or personal, and to act as agent for them in the management of said property, and to act as executor and trustee under last wills or as administrator with or without the will annexed of the estate of any deceased person, and/or to act as guardian or curator of any infant, insane person, idiot or habitual drunkard, and to do all things reasonably or necessarily incident to the performance of all of the businesses hereinabove mentioned or referred to.

"That as such trust company it has been, ever since its organization as aforesaid in 1889, and is now, engaged in the transaction of all of the kinds of business above referred to.

"As to Wills.

"That as an incident to and as a part of its business authorized as aforesaid, respondent has advertised and does advertise its willingness and desire to perform any and all of the kinds of business hereinabove mentioned and referred to, and in so doing it has advertised for and solicited and does advertise for and solicit appointments as executor of wills and as testamentary trustee.

"With respect to wills, respondent represents to this Honorable Court its conduct to be and to have been at the time of the institution of this proceeding, as follows:

"No will in which respondent is not named or is not to be named as executor is, under any circumstances, prepared by respondent or by any person in the sole employ of respondent. In case of a will under which respondent is to be named to act in any fiduciary capacity, respondent recommends the drafting thereof by the lawyer for its customer where the latter has a lawyer, and, when a draft of any such will is submitted to respondent by any such lawyer, a representative of respondent collaborates with such lawyer in the premises. If the lawyer for such customer requests that a representative of respondent draft such a will or a portion thereof, under which respondent is named to act in any fiduciary capacity, for submission by such customer to the latter's lawyer for examination, then such will or portion thereof is so drafted and submitted by respondent. When respondent recommends that a customer consult the latter's lawyer with respect to the drafting of a will and such customer declines to consult a lawyer of his own selection, respondent refers such customer to an outside lawyer not solely employed by respondent; and if such customer refuses to consult such lawyer so recommended, respondent refuses to draft such will.

"Respondent further avers that while its conduct with respect to drafting of wills in which it is nominated as executor or fiduciary is as above stated, nevertheless respondent has the legal right, without violation of law, to draft wills and to consult with its patrons concerning wills in which it is named as executor or other fiduciary, where the sole consideration is the nomination of respondent as executor or fiduciary therein.

"As to Life Insurance Trusts.

"Respondent further says that as an incident to and as a part of its transaction of a general trust business it has been frequently heretofore, and it is now, engaged in acting as trustee in what are known as life insurance trusts; that is, it agrees to endeavor to collect the amounts payable under policies of life insurance at the death of the

assured and agrees to act as trustee of moneys so collected; that it has been asked and is frequently asked to draft and prepare such life insurance trusts in which the respondent is named as trustee.

"That respondent does, when requested, prepare the insurance trust instrument in which it (the respondent) is named or is to be named as trustee, and in connection therewith it discusses with the customer what its (the respondent's) views are as to the meaning of the clauses of any such life insurance trust agreement, and discusses with the customer the duties to be assumed by the respondent as trustee with reference to the investment of the funds to be received by it and the duties of the respondent as trustee in the handling of the estate; and respondent, when requested, calculates the probable amount of the income, inheritance and general property taxes which are payable out of the moneys to be collected by respondent; and respondent does also discuss the compensation of the respondent as trustee. But respondent says that it does not now charge or receive, nor has it at any time charged or received, any valuable consideration or considerations of any kind whatsoever for anything done in connection with the preparation of contracts for life insurance trusts or for any interpretation of the language of such agreements or for any of the views of respondent as to the management or handling of any money collected or to be collected by respondent under such life insurance policies.

"Living Trusts.

"Respondent further says that as an incident to and as a part of the transaction of its general trust business, as above stated, it is now and has been since its organization engaged in the business of acting as trustee under trusts created to take effect during the life of the grantor of such trusts (such trusts will be sometimes hereinafter referred to as 'living trusts'); that when a customer or prospective customer desired and requested the respondent to act as trustee under such living trusts the respondent would discuss with the customer the nature of the trust which the customer desired to create and would discuss the compensation of the trustee and the length of time the creator desired the trust to run, and the views of the trustee and the rights which the creator of the trust desired to have the beneficiaries of the trust to have; whether the creator desired the trust to be revocable or irrevocable during the life of the creator and all other matters relating to the nature and character of the trust which the customer desired to create, and the respondent would, if requested by the prospective creator of the trust, have the trust instrument drafted. But respondent says that it does not now charge nor receive, nor has it at any time charged or received, any valuable consideration or consideration of any kind whatsoever for anything done in connection with the preparation of living trust agreements

or contracts, or for interpretation of the language of such agreements, or for any expression of the views of the respondent as to the management or handling of any money collected or to be collected by respondent under such living trust agreements or contracts.

"With respect to insurance trusts or living trusts respondent represents to this Honorable Court its conduct to be and to have been at the time of the institution of his proceeding as follows, to-wit:

"No trust agreement for a life insurance trust or for a living trust, in which respondent is not named or is not to be named as a fiduciary, is, under any circumstances, prepared by respondent or any person in the sole employment of respondent. In the case of trust agreements for life insurance trusts or for living trusts, in which respondent is named or is to be named as a fiduciary, respondent recommends the drafting thereof by the lawyer for the customer where the latter has a lawyer; and respondent then may collaborate with such lawyer in completing such agreement. If the lawyer for such customer requests a representative of respondent to draft a trust agreement in which respondent is named or is to be named as a fiduciary for submission to such lawyer for examination, then such agreement may be so drafted and submitted by respondent. When respondent recommends that a customer go to the latter's lawyer to have a trust agreement drafted and the customer refuses so to do, such agreement may be drafted by respondent, but before drafting such agreement, respondent explicitly states to such customer that the latter should consult a lawyer not employed by respondent.

"Respondent further says that at no time has this respondent ever acted or claimed to act in any representative capacity or in any capacity representative of a customer in the drafting of life insurance trusts or living trusts or other instruments, but when it has in any way participated in the drafting of such instruments to which it was a party it has acted and claimed to act only as a party to the contract or instrument.

"Respondent further says that all of such activities of respondent were and are clearly within its express and implied charter powers and not in anywise in violation of the laws or the statutes of the State of Missouri."

Under section III of its answer and return respondent further pleads "that Sections 666 and 667 of the Revised Statutes of Missouri, 1919, do not forbid the respondent drafting wills or trust agreements or advising with respect thereto, for the sole consideration of being named as executor or fiduciary therein, because the valuable consideration specified in said sections has reference only to a monetary consideration or a consideration which may be definitely measured in money, as the penalty is the recovery in money of damages in three times the amount of any such valuable consideration."

858

Under Section IV of its answer and return, respondent further pleads that if Sections 666 and 667, Revised Statutes 1919, be given the meaning adopted in relator's information respondent will be deprived of certain rights and benefits vouchsafed to it by Sections 15 and 30 of Article II of the Constitution of Missouri, Section 10 of Article I of the Constitution of the United States, and Section 1 of the Fourteenth Amendment to the Constitution of the United States.

Relator filed motion to strike out certain parts of respondent's answer and return, which motion was overruled. Relator thereupon filed reply in the nature of a general denial and moved the appointment of a commissioner to take testimony on the issues joined. This motion was sustained and Honorable Lionel Davis, a duly licensed and practicing attorney under the laws of this State, was appointed special commissioner to take such testimony and report the same with his findings of fact thereon. The commissioner has filed report of the testimony taken and his findings of fact, and relator has filed exceptions to the latter mainly challenging their sufficiency. This report has substantially aided the court in its study of the evidence given in the case, although, as generally conceded in such cases, the commissioner's findings of fact are not binding upon the court.

The propositions stated under relator's points and authorities are as follows:

"I. Under the authorities construing statutes similar to Missouri and under the doctrines of the common law, the facts admitted by respondent and proved by the testimony constitute the doing of law business.

"II. The drawing or the procuring of or assisting in the drawing, for a valuable consideration, of any will or any paper document or instrument affecting or relating to secular rights need not be done in a representative capacity in order to come within the purview of the statutes.

"III. The trust companies, under the Missouri statute, have no incidental powers as corporations to engage in the practice of law by writing, or aiding or assisting others to write wills.

"IV. Nomination of a trust company as an executor or trustee constitutes a valuable consideration within the meaning of the statutes."

It is suggested in the point first above quoted, and contended in relator's brief and in brief filed by leave of court in behalf of the Missouri Bar Association, that respondent is amenable not only to the statutes defining and regulating "practice of law" and doing "law business," but to the common-law definition of these terms and the court's inherent power to determine who shall do the acts therein embraced. This position is apparently consistent with the information which, among other things, charges that respondent "has for a

long time continuously and willfully violated the laws of this State, and has unlawfully assumed and usurped franchises and privileges, to-wit, to practice law and do law business, not granted to it by the State laws," in certain specified particulars, and that "said activities of respondent are outside its charter powers and in violation of the statutes (particularly Sections 666 and 667 of Revised Statutes of 1919) and laws of the State of Missouri, to the great damage and prejudice of the State of Missouri." On the other hand, counsel for respondent vigorously insist that these subjects are clearly defined and regulated by statutes and that such statutes are exclusive. Inasmuch as this question need not be decided unless it appears that the acts charged are not violative of the statutory law, we shall first consider them in the light of the statutes invoked.

█ Preliminary to this consideration it should be observed that whenever, as in this case, the information avers that the respondent has a corporate existence, and the evident purpose of the proceeding is to have its charter forfeited for nonuser, misuser, or usurpation of powers, then the pleader must plead the acts specifically, so that the corporation may know what it is called upon to prove. [State ex rel. Union Electric Light & Power Co. v. Grimm, 220 Mo. 483, 494, 495, 119 S. W. 626; State ex rel. Major v. Mo. Pac. Ry. Co., 240 Mo. 35, 48, 144 S. W. 1088; State ex inf. Barker v. Armour Packing Co. et al., 265 Mo. 121, 169, 176 S. W. 382.] Also, whenever relator alleges the corporate existence of respondent "its continuance is presumed until the contrary is shown, and the burden of proof is upon the one seeking to oust it from its franchise because of the commission or omission of acts amounting to a forfeiture, even if the proceedings are instituted on behalf of the State," etc. [22 R. C. L., p. 719, sec. 41, note 7; State ex rel. Walker v. Talbot, 123 Mo. 69, 71, 27 S. W. 366; State ex inf. Hadley v. Standard Oil Co., 218 Mo. 1, 324, 325, 116 S. W. 902; State ex inf. Otto v. College of Physicians and Surgeons, 317 Mo. 49, 62, 295 S. W. 537; State ex rel. Gentry v. Bray, 323 Mo. 562, 568, 20 S. W. (2d) 56.]

█ Turning now to the statutes invoked by the information we find that the first sentence of Section 11693, Revised Statutes 1929 (Sec. 667, R. S. 1919), is as follows: "No person shall engage in the 'practice of law' or do 'law business,' as defined in Section 11692, or both, unless he shall have been duly licensed therefor and while his license therefor is in full force and effect, nor shall any association or corporation engage in the 'practice of the law' or do 'law business' as defined in Section 11692, or both." This section further provides that "any person, association or corporation who shall violate the foregoing prohibition of this section shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine not exceeding one hundred dollars and costs of prosecution and shall be subject to

be sued for treble the amount which shall have been paid him or it for any service rendered in violation hereof," etc.

The terms "practice of the law" and "law business" are thus defined in Section 11692, Revised Statutes 1929 (Sec. 666, R. S. 1919): "The 'practice of the law' is hereby defined to be and is the appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the performance of any act in such capacity in connection with proceedings pending or prospective before any court of record, commissioner, referee or any body, board, committee or commission constituted by law or having authority to settle controversies. The 'law business' is hereby defined to be and is the advising or counseling for a valuable consideration of any person, firm, association, or corporation as to any secular law or the drawing or the procuring of or assisting in the drawing for a valuable consideration of any paper, document or instrument affecting or relating to secular rights or the doing of any act for a valuable consideration in a representative capacity, obtaining or tending to obtain or securing or tending to secure for any person, firm, association or corporation any property, or property rights whatsoever."

Apart from matters of inducement the specific acts charged in the information are that respondent:

1. Solicited the drafting and actually drafted wills for its patrons and customers for a valuable consideration, and gave legal advice about the execution of wills for a valuable consideration.

2. Did the same with reference to life insurance trusts.

3. Did the same with reference to living trusts.

It will be observed that the acts specified are all alleged to have been done for a valuable consideration, which is an essential element in the foregoing statutory definition of "law business;" and that respondent in its answer and return, after purporting to set forth its manner of doing business with reference to wills, life insurance trusts and living trusts, further pleads that above Sections 11692 and 11693 "do not forbid the respondent drafting wills or trust agreements or advising with respect thereto, for the sole consideration of being named as executor or fiduciary therein, because the valuable consideration specified in said sections has reference only to a monetary consideration or a consideration which may be definitely measured in money," etc. This phase of the pleadings presents an issue of law as to the meaning of "valuable consideration" as that term is used in above Section 11692.

Counsel for respondent say that "valuable consideration" as there used means "money or something of value which can be readily and certainly measured in money," because above Section 11693 provides that any person, association or corporation who shall violate the prohibition therein contained as to "practice of the law" or

"law business," as defined in the preceding section, "shall be subject to be sued for treble the amount which shall have been paid him or it for any service rendered in violation hereof by the person, firm, association or corporation paying the same," etc.; and because Section 11694, Revised Statutes 1929, provides that any person, firm, association or corporation who violates the prohibition therein contained against division by any licensed attorney of "any fees or compensation received by him in the 'practice of law' or in doing 'law business' with any person not a licensed attorney or any firm not wholly composed of licensed attorneys, or any association or corporation," etc., "shall be subject to be sued for treble the amount of any and all sums of money paid in violation hereof by the person, persons, association or corporation paying the fees or compensation which shall have been so divided," etc.

We do not agree that these sections warrant respondent's conclusion. Each section specifically provides that any violation thereof shall constitute a misdemeanor. It may be that the provision for additional liability in the form of a money judgment would not be enforceable unless there was a consideration of the kind and character contemplated by the language authorizing the judgment. However, under above Section 11693 unlawful engagement in the "practice of law" is a misdemeanor regardless of whether or not there is any valuable consideration. Also, unlawful division of "any fees or compensation" received in the "practice of law" is a misdemeanor under Section 11694. Likewise, unlawfully doing "law business," which is defined in above Section 11692 as doing certain things for a valuable consideration, is a misdemeanor under Section 11693, and unlawfully dividing "any fees or compensation" is a misdemeanor under Section 11694. It thus appears that the prohibitions laid down by these statutes are not limited to cases wherein there is a monetary consideration or a consideration that may be definitely measured in money. Requirement of this character of consideration would arise only, if at all, upon an attempted enforcement of the supplemental statutory liability for a money judgment.

Furthermore, we have approved a more comprehensive definition than the one here proposed by respondent. In the early case of Mullanphy v. Riley, 10 Mo. 309, 311, we said: "A valuable consideration is one, that is either a benefit to the party promising, or some trouble or prejudice to the party to whom the promise is made. [2 Kent's Com. 465.]" In Green v. Higham, 161 Mo. 333, 337, 338, 61 S. W. 798, we said that a valuable consideration is " 'a benefit to the party promising, or to a third person at his request, or an inconvenience, loss, or injury, or the risk of it to the party promised.' [Dr. John B. Minor's Insts. 4 Vol., pt. 1, p. 16; 2 Blackstone's Com., 445, note 19; Smith's Contracts, 141.]" Also in Strode v. St. Louis

862

Transit Co., 197 Mo. 616, 623, 95 S. W. 851, we quoted with approval as follows from 6. Am. and Eng. Ency. Law (2 Ed.) 703: "A valuable consideration consists either in some right, interest, profit or benefit accruing to the party who makes the promise, or some forbearance, detriment, loss, responsibility, act, labor, or service, given, suffered or undertaken by the party to whom it is made." Abundant authority for such definitions is indicated in note 12, section 67, page 654, 6 Ruling Case Law, where the text states that "a valuable consideration, in the sense of the law, may consist either in some right, interest, profit, or benefit accruing to the one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other."

 Proceeding further to questions of law raised in relator's other points, it must be conceded, as stated in point II, that "the drawing or the procuring of or assisting in the drawing, for a valuable consideration, of any will or any paper document or instrument affecting or relating to secular rights need not be done in a representative capacity in order to come within the purview of the statutes." The part of Section 11692, supra, defining "law business" may be fairly so interpreted.

Also, the part of point III asserting that "trust companies, under the Missouri statute, have no incidental powers as corporations to engage in the practice of law," is not controverted by respondent. Its contention is that the acts charged do not constitute either "practice of law" or "law business."

 This brings us to relator's point IV, that "nomination of a trust company as an executor or trustee constitutes a valuable consideration within the meaning of the statutes." Counsel for respondent stoutly challenge this proposition, which is the crux of relator's charge under the statutes.

Preliminary to ruling this question as it arises on the pleadings and evidence before us it is proper to observe that in its answer and return respondent expressly limits the averments as to its conduct, with respect to wills, life insurance trusts and living trusts, to the present and to "the time of the institution of this proceeding." In State ex inf. Major v. Arkansas Lumber Company, 260 Mo. 212, 284, 285, 286, 169 S. W. 145, we construed what is now Section 863, Revised Statutes 1929, and held that thereunder the charter of a corporation is subject to forfeiture for any acts warranting the same which were committed within a period of three years prior to the filing of the information. Here the information was filed October 7, 1930. It follows that respondent's conduct with respect to matters charged in the information is a proper subject of inquiry for a period of three years prior thereto.

Following respondent's contention that the consideration referred

to in the statute is a money consideration, which claim we have already discussed and overruled, respondent's counsel say that "the mere nomination of a trust company as an executor or fiduciary in a will is no consideration of any kind, valuable or otherwise." This position is clearly inconsistent with respondent's pleaded assumption that for drafting wills and consulting with its patrons concerning wills "the sole consideration is the nomination of respondent as executor or fiduciary," which appears in respondent's answer and return in connection with the claim that it has a legal right to render these services, and the evidence tends to support this pleaded assumption rather than respondent's present contention.

The evidence shows that prior to July 3, 1930, when respondent adopted a resolution setting forth "rules for the transaction of its business," which one of respondent's vice-presidents testified was "an attempt to satisfy the Bar Association and to prevent litigation," respondent drafted wills and gave advice concerning the same whenever a prospective maker of a will agreed that respondent should be named as executor or fiduciary therein, and it appears that one of respondent's employees continued to follow this practice for a year or so after the resolution was adopted, although after such adoption it was the practice of other employees to refuse to draft wills unless requested to do so or to "collaborate" therein by the will maker's regular counsel or counsel suggested by respondent and not in its sole employ. However, there was evidence that respondent, since the adoption of its aforesaid resolution, at times drafted and submitted wills though not requested to do so by the will maker's counsel, and that sometimes such counsel's request for and participation in the rendition of such services were obviously perfunctory. According to the proof of respondent's practice, both prior and subsequent to July 3, 1930, its nomination as executor or trustee in a will or trust instrument was accomplished by a simple bilateral contract or agreement between respondent and the maker consisting of an offer or promise by respondent to render such services for such nomination and a return promise by the maker of the nomination for the services, both promises being made simultaneously. "In bilateral contracts the consideration is a return promise." [1 American Law Institute Restatement of Contracts, sec. 75, comment a, p. 82.] "Mutual promises are concurrent considerations, and will support each other if they be made simultaneously, unless one or the other be void." [Wharton's Law Dictionary (2 Am. Ed.), p. 170, defining classes of valuable considerations.] It is true that no such contract in writing was offered in evidence, and it may be fairly inferred from all the evidence that these contracts were not reduced to writing and perhaps not even orally expressed in detail as above stated; but the inescapable conclusion from the pleadings and proof before us is that such was

the meeting of minds whenever respondent drew or "collaborated" in drawing such instruments and gave advice in connection therewith.

But, counsel for respondent say, such nomination cannot constitute a valuable consideration because it "may be revoked at any time without any wrong to respondent." Conceding that makers of wills and trust agreements can and sometimes do revoke their nominations of executors and trustees, does it follow that a nomination when given is not a valuable consideration for services rendered? Undoubtedly drafting or assisting in drafting wills and trust agreements and giving advice in connection therewith are some trouble and inconvenience to respondent and some benefit to the persons for whom these services are rendered. Also, the mere nomination of respondent as executor or trustee is a surrender by the maker to respondent of his right to nominate another unless and until the nomination is revoked, and certainly respondent is in no position to say that these mere nominations do not constitute a valuable consideration when the evidence shows that after years of experience it still maintains an expensive staff to solicit them and to render the "free" service it deems necessary to obtain them, and that, notwithstanding some revocations by the makers, these mere nominations have resulted in attaching business for the transaction of which respondent's annual compensation exceeded $250,000 for each of the years 1926, 1927, 1928, 1929 and 1930. The demonstrated certainty of business benefit flowing to respondent from its mere nomination as executor or trustee in such instruments sets at naught all argument that the nomination is a mere "motive," moral obligation, or "hope" of benefit, as distinguished from a valuable consideration. Hence, the inapplicability of respondent's cited cases holding that mere motive, hope, or moral obligation is not a valuable consideration. Likewise, respondent's authorities on lack of mutuality and indefinite or illusory promises are without application.

Counsel for respondent also say that any compensation received by respondent is for acting as executor or trustee and not for drawing the instrument or giving advice in connection therewith. Surely in this modern day it will not be said that it costs nothing to acquire business. It must be inferred from the evidence before us that no inconsiderable part of the cost of obtaining these nominations is chargeable to the staff maintained to draw or "collaborate" in drawing these instruments and give advice in connection therewith. Naturally this part of the overhead expended in obtaining the business must be paid out of the compensation received for transacting the business so obtained. Hence, we do not see how it can be truthfully said that each and every nomination procured by this thinly disguised method of getting business is not a valuable consideration to respondent. Drawing somewhat upon the reasoning and expression

of Mr. Justice HOLMES in Herbert v. Shanley Co., 242 U. S. 591, 594, 595, we may say respondent's services here in question "are not eleemosynary." They are part of a total for which the estate of the maker of the will or trust pays, and the fact that the price of the whole is attributed to particular services other than those in question is not important. Whether the service in question "pays or not, the purpose of employing it is profit, and that is profit enough." However, the overwhelming evidence in this case is that the consideration received for the service rendered is highly profitable to respondent. See, also, M. Witmark & Sons v. L. Bamberger & Co., 291 Fed. 776, 779, and Jerome H. Remick & Co. v. American Automobile Accessories Co., 5 Fed. (2d) 411, which, like the Shanley case, were copyright infringement cases involving the question whether a "free" musical feature offered with other forms of public entertainment for profit constituted a public performance for profit.

It must be remembered that we are construing a statute enacted under the police power and primarily intended to protect the public from the rendition of certain services, deemed to require special fitness and training on the part of those performing the same, by persons not lawfully held to possess the requisite qualifications. While its penal provisions should be strictly construed the statute as a whole should be interpreted, if possible, so as to effectuate the legislative intent. If the words "valuable consideration" should be given the narrow meaning sought by respondent, then any act designated in the statute as constituting "law business" might be performed with impunity by any person, though wholly unqualified or unfit to render the service, for the valuable consideration of advancing a business whatever its nature might be. Such an interpretation would entirely thwart the plain intent and purpose of this part of the statute. For the reasons hereinabove stated we think that nomination of a trust company as an executor or trustee constitutes a valuable consideration within the meaning of Section 11692, Revised Statutes 1929.

Counsel for respondent also advance the theory that it is privileged to draft wills and give advice in connection therewith by Section 5426, Revised Statutes 1929, which section is as follows:

"When any corporation shall have been named as executor in any will hereafter executed, and shall have qualified as such the presumption shall be that such will was not prepared by a salaried employee of said corporation; but upon the application of any heir, devisee or legatee, made in the probate court of the county for the removal of such executor said presumption may be rebutted by evidence satisfactory to the court hearing such application, unless said will or some codicil or certificate attached thereto shall contain a recital that at or before the execution of said will, the testator had advice or counsel in relation thereto from some one not under salary from said

corporation. In the absence of such recital, the court may on such application and upon satisfactory evidence that said will was prepared by a salaried employee of said corporation, revoke the appointment of, and remove such corporation as such executor."

This statute is clearly in the nature of a limitation upon rather than a grant of power to trust companies. Being a part of Article 3 relating to trust companies, it apparently occurred to the legislative mind that these companies might undertake to prepare wills and this statute was passed in condemnation of such a practice. The statute first establishes a presumption, favorable to the trust company named as executor, that such will was not prepared by a salaried employee of such trust company, which presumption, upon proper application for removal of such executor, "may be rebutted by evidence satisfactory to the court hearing such application, unless said will or some codicil or certificate attached thereto shall contain a recital that at or before the execution of said will, the testator had advice or counsel in relation thereto from some one not under salary from said corporation." Passing by without ruling relator's suggestion of lack of legislative power to prescribe a rule of evidence that would make such a bare recital conclusive of the facts, we observe that this provision apparently recognizes the substantial difference between the mere clerical feature of writing a will and the advice or counsel essential to its preparation. In the absence of such recital and upon satisfactory evidence that the will was "prepared" by a salaried employee of such trust company, the court is empowered to revoke the appointment of and remove the trust company as executor. The plain import of this statute is decidedly against respondent's contention.

Finally, counsel for respondent say that subdivisions 3 and 4 of Section 5421, Revised Statutes 1929, under which statute trust companies are organized, "expressly authorize such companies to accept trusts under such terms as may be agreed upon in the instrument creating the trust," and thereby "recognize that every trust company has a legal right to discuss with the creator of the trust the terms of such instrument, and also recognize that the trust company, in agreeing on the terms of the trust agreement in which it is named as trustee, it (the trust company) does not act in a representative capacity, but that it acts in its own right, just as a party to any other contract would act." The subdivisions cited set forth some of the purposes for which trust companies may be created and are as follows:

"3. To accept and execute all such trusts and perform such duties of every description as may be committed to them by any person or persons whatsoever, or any corporation, and act as assignee, receiver, trustee and depository, and to accept and execute

all such trusts and perform such duties of every description as may be committed or transferred to them by order, judgment or decree of any of the courts of record of this State or other state, or of the United States.

"4. To take, accept and hold, by the order, judgment or decree of any court of this State, or of any other state, or of the United States, or by gift, grant, assignment, transfer, devise or bequest of any person or corporation, any real or personal property in trust, and to execute and perform any and all such legal and lawful trusts in regard to the same upon the terms, conditions, limitations and restrictions which may be declared, imposed, established or agreed upon in and by such order, judgment, decree, gift, grant, assignment, transfer, devise or bequest."

It is apparent from the above statement of respondent's contention that these subdivisions are invoked only with reference to trust agreements to which the trustee is a signatory party. The extent of the capacity of a corporation to take and hold property in trust is the same as that of a natural person except as limited by law; and its capacity to administer a trust depends upon the extent of the powers conferred upon it by law. [Restatement American Law Institute, Trusts (Ten. Draft No. 1), sec. 92.] We are not advised of any statutory restriction upon the well-recognized right of natural persons to act for themselves insofar as they are personally concerned in matters that constitute law practice or law business (1 Thornton, Attorneys at Law (1914) 27.; People v. Alfani, 227 N. Y. 334, 341; Copeland v. Dabbs (Ala.), 129 So. 88), although it has been held that a corporation cannot be represented in court except by a licensed attorney. [N. J. Photo Engr. Co. v. Carl Schonert & Sons, 95 N. J. Eq. 12, 122 Atl. 307; Black & White Operating Co. v. Grosbart, 151 Atl. 630; Cary & Co. v. Satterlee & Co., 166 Minn. 507, 208 N. W. 408.] The phrase "terms of the trust" means the manifestation of intention of the settlor of the trust with respect to the trust in a manner which admits of its proof in judicial proceedings. [Restatement, Trust (Ten. Draft No. 1), sec. 7.]

Of course, a trust instrument signed by both settlor and trustee means that the trustee has agreed to act in accordance with the "terms of the trust." It may be that the latter part of above subdivision 4 recognizes that the trustee "has a legal right to discuss with the creator of the trust" the terms by which it agrees to be bound, and that in so doing, and even in drawing the instrument, the trustee may act not in a representative capacity but in its own right, just as a party to any other contract would act. Even so, we find nothing, either express or implied, in the statute under which trust companies are created which authorizes them to advise or counsel any other person for a valuable consideration "as to any

secular law,'' or to draw or assist in drawing for any other person for a valuable consideration ''any paper, document or instrument affecting or relating to secular rights.'' If they do these things they are amenable to the statutes here invoked, because subdivision 13 of Section 5421, Revised Statutes 1929, under which trust companies are created makes them subject ''to all liabilities and duties imposed upon them by any law of this State.''

We are unable to reconcile respondent's insistence of single representation with the proof of what it actually does. The evidence shows that one desiring to create an insurance trust or a living trust comes to respondent because, for one reason or another, he believes that it is peculiarly qualified to advise concerning and to execute such trusts. When the prospective patron indicates that he will nominate respondent as trustee, respondent, apparently recognizing the impropriety of acting both for itself and the settlor of the trust in such matters, tells him that he should advise with his lawyer and have him draw the instrument. If he has no regular lawyer respondent suggests one. If, actuated perhaps by unusual confidence in respondent or by a sense of thrift when he learns that respondent will perform these services ''free,'' he does not consult a lawyer, then respondent draws the instrument for him and gives him all counsel and advice requested in connection therewith, all for the consideration of being nominated trustee which we have just held is a valuable consideration. The evidence abundantly shows that frequently such counsel and advice relate to secular laws and the instrument drawn necessarily affects and relates to secular rights of the settlor and his beneficiaries.

In such circumstances we think it is no answer to say that the trust company does these things solely for itself and not for the settlor of the trust, and that the latter knowingly accepts the services at his own risk. When such services are rendered without the intervention of disinterested counsel it is fair to assume that if the settlor of the trust is not himself a lawyer he knows substantially nothing ''as to any secular law'' or as to how the instrument tendered for his signature affects or relates to his ''secular rights'' or those of his beneficiaries, except what the employees of the trust company tell him, and he accepts these services as rendered for him and as fully protecting the interests he wants to conserve. Surely respondent does not mean to say that it does these things solely for itself and not for the settlor of the trust, when it has lulled him into a sense of security and acceptance of the service by finally doing the very thing it said should be done by disinterested counsel and which the law says it cannot do. It will not be heard to say that it is doing only the one thing when the whole transaction shows that it is also doing the other.

Reasons grounded in the public welfare call for strict enforcement of these statutes against corporate fiduciaries. Natur-

ally the settlor of a trust wants the most service that can be had from the trustee at the least expense to his estate. Just as naturally the trustee wants as broad powers with as little liability and as much compensation as may be consistent with getting and holding the trust business. Thus, in the very inception of a trust agreement there are certain interests of the settlor and the trustee that are conflicting. The same situation arises when one nominated as executor or trustee undertakes to draw a will or advise the will maker as to any secular law in connection therewith. It is well stated in 41 Yale Law Journal (1931-1932), pages 82, 83, as follows:

"It is obvious that the salaried employee of the trust company cannot be completely disinterested. At times the best interests of the testator are served by an outright disposition of his estate, but then there are no trustee's fees. Circumstances might make it desirable that there be two trustees, but in that event the company would have to share the fees with another. It is often in the client's interest that the trust be of short duration, but those which endure over a long period of years are most profitable to the fiduciary. The client's interest might demand that the powers of the trustee be rather limited, but the company wants them as broad as possible. It is in the interest of the trust company that a provision be inserted making it liable only for actual misfeasance or gross negligence, while the client's interest might demand that the trustee be held to a high degree of care.

"The trust officer is thus placed in an awkward position. His salary is directly or indirectly dependent upon the amount of trust business which he secures. As a conscientious employee he will try to further its interests whenever possible. It is a rather unusual man who under such circumstances solely considers the interest of the testator. And even such conscientious men, trained in the trust company atmosphere and possibly having exaggerated ideas of the advantages of trusts and corporate fiduciaries, might easily convince themselves that the interests of the client and of the company were identical."

Also, see People v. People's Trust Co., 167 N. Y. Supp. 767, a case of divided allegiance much like the record before us, as follows:

"The relation between attorney and client is confidential in the extreme. The attorney is under all the obligations attached to a fiduciary relation, and above all things he owes undivided loyalty to his client, unhampered by obligations to any other employer. These duties are enforced by the drastic remedy of disbarment proceeding, a measure outside of and in addition to other legal remedies. An attorney may not divulge confidential communications of his clients or the advice given thereon. It is obvious that the intervention of a corporation, the general employer of an attorney, between him and his client, is destructive of this necessary and important relation.

There can be no longer uninfluenced devotion to the client's interests. There exists along with, and necessarily influencing, the devotion to the client, the duty which the attorney owes to his general employers. Divided obligations in trust·relations are obnoxious to the law, and in none more so than in that of attorney and client. It was to remedy the growing tendency of corporations to enter the field of practicing law, and perform legal services through lawyers in their general employ, and owing loyalty primarily to them and not to the client, that this law was enacted.''

Respondent evidently recognizes the force of the above reasoning with respect to wills, because the evidence shows that since July 3, 1930, it has generally refused to prepare or participate in the preparation of wills or give any legal· advice in connection therewith unless called upon to collaborate with disinterested counsel representing the will maker. We think the statutes require the same scrupulous attitude with reference to trust agreements and in this connection it is not amiss to observe that collaboration in good faith does not mean the entire preparation of wills and trust agreements by the fiduciaries named therein and their submission for the mere perfunctory approval of supposedly disinterested counsel. If it be suggested that collusion with such counsel would be necessary to produce this result, the answer· is that attorneys entering into any such collusive arrangement might well be held amenable to laws regulating their own francise or right to practice law and do law business.

Doubtless, disinterested counsel for the will maker or the settlor of a trust should know that the provisions of the instrument he proposes to draw are of such a nature that the executor or trustee nominated will accept the trust. We can think of no good reason why the fiduciary may not in good faith be consulted by such· counsel with reference thereto. Likewise, the fiduciary, through its own attorneys and in its own behalf; may examine and advise as to such instrument before accepting the trust. [People v. People's Trust Co., 167 N. Y. Supp. 767, 770.] Such a course is clearly distinguishable from the practice we have just discussed, and competitive commercial conditions should not be allowed to obscure the distinction. Its strict observance enhances the social value of services that may properly be rendered in the vast field legitimately open to corporate fiduciaries, and deprives· them of no constitutional right or benefit. As said in 42 Harvard Law Review, page 248, note 177 (1928-1929), relative to liability of the corporate trustee: ''In this field of the law we find legal coercion and self-interest strikingly united with a sense of public right, the third of the governing forces that make for justice in its genuine significance. 'Who can doubt that courts of equity in enforcing the great principle that a trustee shall not profit by his trust nor even place himself in a position where

his private interest may collide with his fiduciary duty, have raised the level of business honor, and kept awake a conscience that might otherwise have slumbered?' [Cardozo, The Growth of the Law (1924) 96.]"

Relator lays particular stress upon evidence tending to show that in several instances respondent contracted with legal representatives of estates of deceased persons, wherein it held no appointment either as executor, administrator or trustee, to perform and did perform all services necessary in the probate court for a stated compensation. These acts appear to be without warrant or authority of law, but they are not among the charges specified in relator's information.

Reference has already been made to respondent's pleading to the effect that if Sections 666 and 667, Revised Statutes 1919, be given the meaning adopted in relator's information respondent wll be deprived of certain rights and benefits vouchsafed to it by certain sections of the State and Federal constitutions. This is an attack upon relator's interpretation of these statutes, but it does not challenge their constitutionality. In view of our repeated holdings that such a pleading raises no constitutional question in the sense of conferring jurisdiction on this court (Curtin v. Zerbst Pharmacal Co. et al., 333 Mo. 346, 62 S. W. (2d) 771, 772, and cases there cited), we presume the matter was raised arguendo. No reference thereto appears in respondent's "points and authorities" except the bare citation of the constitutional provisions pleaded. Nor does anything with reference thereto appear in its argument except a paraphrase of the matter pleaded. It seems apparent from what has already been said that the construction herein placed upon these statutes deprives respondent of no constitutional right.

Upon the pleadings and evidence we are constrained to hold that respondent has usurped rights and privileges not conferred upon it or warranted by law, in that it has engaged in "law business" in violation of the statutes of this State as charged in the information. In view of this conclusion we reserve ruling upon the question of respondent's amenability to law independent of the statutes.

It appears from the whole record that this proceeding was ably, fairly, vigorously and in good faith conducted on both sides for the purpose of determining what respondent could lawfully do and what it could not lawfully do in the premises pleaded. The prayer of relator's information asks neither ouster nor fine herein. The character of judgment in a quo warranto case is largely within the discretion of the court. [State ex rel. Barrett v. First National Bank, 297 Mo. 397, 416, 249 S. W. 619; State ex inf. Hadley v. Delmar Jockey Club, 200 Mo. 34, 66, 69, 98 S. W. 539.] We think that the evident purpose of this proceeding will be best served by imposing a nominal fine and costs upon respondent and in other respects

following the prayer of the information. Therefore, it is ordered and adjudged that respondent pay a fine of One Dollar ($1.00) and the costs herein, and that respondent henceforth cease and desist from the aforesaid illegal practices and conduct its business according to law on penalty of the forfeiture of its corporate charter and franchise. All concur.